Ruben Baez Godoy, a minor, by his guardian ad litem, Susan M. Gramling, Plaintiff-Appellant,†

v.

E.I. du Pont de Nemours and Company, ConAgra Foods, Inc., The Sherwin-Williams Company, American Cyanamid Company, Armstrong Containers, Defendants-Respondents,

Walter Stankowski, Wayne Stankowski and Wisconsin Electric Power Company, Defendants,

Acuity, Intervenor-Defendant.

Court of Appeals

*No. 2006AP2670. Submitted on briefs October 3, 2007. —Decided October 16, 2007.*

2007 WI App 239

(Also reported in 743 N.W.2d 159.)

† Petition to review granted 3/18/08.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Peter G. Earle* of the Law Offices of *Peter Earle, LLC*, Milwaukee and *Jonathan D. Orent* of *Motley Rice, LLC*, Providence, RI.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *Richard H. Porter* and *Jean-Marie Feedham* of *Gonzalez, Saggio & Harlan*, Milwaukee and *Richard W. Mark* and *Elyse D. Echtman* of *Orrick, Herrington & Sutcliffe, LLP*, New York, NY and *Ralph A. Weber* and *Beth Ermatinger Hanan* of *Gass Weber Mullins LLC*, Milwaukee.

Before Curley, P.J., Wedemeyer and Fine, JJ.

¶ 1. FINE, J. Ruben Baez Godoy, a minor, by his guardian *ad litem*, Susan M. Gramling, appeals, pursuant to our leave, the circuit court's non-final order dismissing his strict-liability and negligence defective-design claims against manufacturers of white-lead-carbonate pigment, E.I. du Pont de Nemours and Company, The Sherwin-Williams Company, and Armstrong Containers.[1] The circuit court's order was entered on October 23, 2006, and reified its September 22, 2006, oral decision. On September 29, 2006, Godoy filed a

---

[1] The circuit court's order recited that it was ordering "the dismissal with prejudice Plaintiff's strict liability and negligence claims to the extent that said claims are based upon allegations that white lead carbonate pigment was defectively designed." ConAgra Foods, Inc., was originally a party to this appeal but, by letter dated July 5, 2007, told the court that Godoy "has agreed to dismiss" it from his lawsuit, and that its " 'interests are not affected by the issues raised' " by the appeal. (Quoting Wis. Stat. Rule 809.19(3)(a)3.)

228

second amended complaint adding American Cyanamid Company, BWAY Corporation, and Cytec Industries, Inc.[2] We granted leave to American Cyanamid to intervene in this appeal. The crux of the appeal centers on whether Godoy's complaint sufficiently alleges that white-lead-carbonate pigment was defectively designed. The circuit court ruled that it did not. On our *de novo* review, we agree.

## I.

### A.

¶ 2. "Our review of a motion to dismiss is limited to the allegations in the complaint," *Noonan v. Northwestern Mut. Life Ins. Co.*, 2004 WI App 154, ¶ 30, 276 Wis. 2d 33, 49, 687 N.W.2d 254, 262, which must, of course, be looked at in a light most favorable to the plaintiff, *Barry v. Maple Bluff Country Club*, 221 Wis. 2d 707, 723, 586 N.W.2d 182, 188 (Ct. App. 1998) (Complaints must be construed liberally, and a motion to dismiss can be granted "only if it is clear that under no circumstances can [the plaintiff] prevail."). Although the circuit court's oral decision reflects its careful and insightful consideration of the issue, our review of its dismissal of the defective-design claims is *de novo. See Larson v. Burmaster*, 2006 WI App 142, ¶ 17, 295 Wis. 2d 333, 348, 720 N.W.2d 134, 141. Accordingly, we turn to Godoy's complaint to see if its defective-design claims pass muster.

---

[2] The second amended complaint asserts that Cytec Industries "is being sued as the successor-in-interest to American Cyanamid Co.," and another company that also made white-lead carbonate.

## B.

¶ 3. Godoy alleges that he suffered "lead poisoning by ingesting white lead carbonate derived from intact accessible painted surfaces, paint chips, paint flakes and dust" in an apartment his family rented. His complaint targets the white-lead carbonate made by the defendants and used by paint companies to make the paint that injured him.[3] The paint manufacturers were the subject of another lawsuit, *Thomas ex rel. Gramling v. Mallett*, 2005 WI 129, 285 Wis. 2d 236, 701 N.W.2d 523, which held that a plaintiff alleging that he or she was injured by lead-based paint need not specify the responsible manufacturer. *Id.*, 2005 WI 129, ¶ 27, 285 Wis. 2d at 255–256, 701 N.W.2d at 532–533. Godoy does not allege that the defendants helped the paint manufacturers formulate white lead-based paint, although a fair reading of the complaint supports his contention that the white-lead carbonate was intended to be used in paint. Godoy asserts that the defendants knew that white-lead carbonate was dangerous when used in paint but lied about it: "The Industry Defendants also contributed to the creation of a risk of harm to children when they failed to disclose the hazardous nature of white lead [carbonate] and instead marketed and falsely represented its products containing white lead carbonate as safe." Although the circuit court dismissed Godoy's defective-design claims, his failure-to-warn claim survives. *See Pomplun v. Rockwell Int'l Corp.*, 203 Wis. 2d 303, 307, 552 N.W.2d 632, 633 (Ct. App. 1996) ("Failure-to-warn is a theory of recovery that is separate from a claim alleging defective design.").

---

[3] Godoy has also sued the landlords. They are not parties to this appeal.

¶ 4. In dismissing Godoy's claims, the circuit court ruled that "lead is an inherent characteristic of white lead carbonate," and that white-lead carbonate could not be designed as white-lead carbonate without using lead. In connection with Godoy's imbricated contention that a white paint pigment could be made without the lead but using zinc instead, the circuit court observed that a "design decision" to use zinc would result in "white zinc carbonate" not white-lead carbonate. The issue here is whether a product can be said to be defectively designed when that design is inherent in the nature of the product so that an alternative design would make the product something else.

## II.

¶ 5. Under the strict-liability rubric, a product's design is defective when it has "harmful ingredients, *not characteristic of the product itself* either as to presence or quantity, but also from foreign objects contained in the product . . . or from the way in which the product is prepared." RESTATEMENT (SECOND) OF TORTS § 402A cmt. h (1965) (emphasis added). The same analysis applies to the sibling negligence-theory of defective-design liability, which operates in tandem with strict-liability, *see Morden v. Continental AG*, 2000 WI 51, ¶ 42, 235 Wis. 2d 325, 353, 611 N.W.2d 659, 673 ("Wisconsin case law allows plaintiffs to seek recovery from a manufacturer for the defective design of a product under a strict liability theory and/or a negligence theory."). Thus, we assume but do not here hold that white paint using white-lead carbonate is defectively designed because just as you can make protective surgical gloves without using injury-causing latex, *see Green v. Smith & Nephew AHP, Inc.*, 2001 WI 109, 245 Wis. 2d 772, 629

N.W.2d 727, you can make white paint without using white-lead carbonate, *cf. Thomas ex rel. Gramling*, 2005 WI 129, ¶ 181 n.2, 285 Wis. 2d at 330 n.2, 701 N.W.2d at 569 n.2 (design-defect claims by child injured by lead-based paint dismissed by the circuit court and not appealed) (Wilcox, J., dissenting). As the circuit court here ruled, however, white-lead carbonate cannot be made without using lead.

██

¶ 6. It is true, as Godoy argues and as we expressed it in *Tanner v. Shoupe*, 228 Wis. 2d 357, 367, 596 N.W.2d 805, 812 (Ct. App. 1999), that "[i]n order for a defective design to render a product unreasonably dangerous the defect must be hidden from the ordinary consumer, that is, not an open and obvious defect." *See also Sumnicht v. Toyota Motor Sales, U.S.A., Inc.*, 121 Wis. 2d 338, 369, 360 N.W.2d 2, 16 (1984) ("[F]or a defective design condition to be unreasonably dangerous, it must be found to be hidden and not [be] an obvious defect."). But the *converse is not true:* something that is an "open and obvious" danger does not necessarily mean that the danger results from a *design defect.* And, as the circuit court recognized, this is the flaw in Godoy's argument, because Godoy contends that no matter *how* white-lead-carbonate pigment could be designed, it is "defective."[4]

██

¶ 7. Based on the allegations in Godoy's complaint, white-lead carbonate was the raw material for the paint that is alleged to have caused his injuries, just

---

[4] At the hearing on the defendants' motion to dismiss, Godoy's lawyer replied "Yes" to the circuit court's question, "You are saying basically no matter how it [white-lead carbonate] is designed, it is defective."

as natural rubber-tree-derived latex was the raw material used to make the surgical gloves in *Green*, 2001 WI 109, ¶ 11, 245 Wis. 2d at 785, 629 N.W.2d at 732. Although Godoy disputes the characterization of white-lead carbonate as a "raw material" because it was "manufactured" from lead, which, he submits, was the *ultimate* raw material, lead itself is a manufactured product—it has to be ripped from the earth and processed from ore before it can be used. *See http://en.wikipedia.org/wiki/Lead#Processing_of_metal _from_ore.* Further, the integration of one product, whether "manufactured" or not, into another product that is thereby made dangerously defective, does not, by that fact alone, impose liability on the maker of the integrated product. *See Shawver v. Roberts Corp.*, 90 Wis. 2d 672, 685, 280 N.W.2d 226, 232–233 (1979) (belt installed on a conveyor was "subject to further processing"). Here, consistent with *Shawver*, the white-lead carbonate had to be further processed by its integration into paint.

■

¶ 8. Although Wisconsin has neither adopted nor rejected the RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY (1998), *Haase v. Badger Mining Corp.*, 2004 WI 97, ¶ 23, 274 Wis. 2d 143, 153, 682 N.W.2d 389, 394, and we need not adopt it here, its teaching can help illumine our inquiry, especially because the Restatement Reporter relied in part on *Shawver* in drafting one of the applicable sections, § 5, *see* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 5 reporters' note cmt. a (1998). Section 5 sets the black letter rule:

> One engaged in the business of selling or otherwise distributing product components who sells or distrib-

utes a component is subject to liability for harm to persons or property caused by a product into which the component is integrated if:

(a) the component is defective in itself, as defined in this Chapter, and the defect causes the harm; or

(b)(1) the seller or distributor of the component substantially participates in the integration of the component into the design of the product; and

(b)(2) the integration of the component causes the product to be defective, as defined in this Chapter; and

(b)(3) the defect in the product causes the harm.

Under this section, there are two alternative routes to holding a raw-material supplier liable for damages caused by a product that uses the raw material and causes harm because the product is defective: (1) the component is, itself, defective; or (2) the component supplier "substantially participates in the integration of the component into the design of the product." *Ibid.* As we have seen, Godoy's complaint does not allege the latter, no less setting out facts to support a contention that the defendants substantially participated in the paint manufacturers' formulation of their paint. Indeed, a fair reading of the complaint, to which we are limited, *see Noonan*, 2004 WI App 154, ¶ 30, 276 Wis. 2d at 49, 687 N.W.2d at 262, is that white-lead carbonate has uses other than as a paint pigment, and Godoy's lawyer told the circuit court that "[t]here is a use for white lead carbonate in plastics." Thus, we turn to the first disjunctive requirement, whether the component was, itself, "defective," as that term is used in the Restatement.

A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is

234

defective in design, or is defective because of inadequate instructions or warnings. A product:

(a) contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product;

(b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe;

(c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 (1998). Subsection (c), of course, refers to a failure to warn of a product's lurking dangers, and, as already noted, is not at issue here because Godoy's failure-to-warn claim survives. Subsection (a) refers to a departure from a product's design that makes the product dangerous. This, too, is not at issue here because there is no allegation in Godoy's complaint that the defendants departed from their design formulations in making their white-lead carbonate. Thus, the only possible definition of "defective" that could be applicable here is subsection (b), which requires that "the foreseeable risks of harm posed by the product could have been

reduced or avoided by the adoption of a reasonable alternative design." Putting aside the fact that in Wisconsin "foreseeability" is not an element of a strict-liability claim (but is of a claim asserting negligence), *Haase*, 2004 WI 97, ¶¶ 39, 41, 274 Wis. 2d at 159–160, 682 N.W.2d at 397–398, as we have seen there is no "alternative design" to make white-lead carbonate without using lead. Thus, the RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 5(a) (1998) does not sanction imposing liability on the defendants. As expressed by § 5 cmt. c: "[R]aw-materials sellers are not subject to liability for harm caused by defective design of the end-product."

¶ 9. Just as one cannot make natural latex without using natural latex (and, significantly, the plaintiff in *Green* did not sue the natural-latex manufacturers), the bottom-line here, as recognized by the circuit court, is that one cannot make white-lead carbonate without using lead. Thus, Godoy's complaint does not support either a strict-liability or a negligence defective-design claim. Accordingly, we affirm

*By the Court.*—Order affirmed.