Edward U. Notz,
Plaintiff-Appellant-Cross-Respondent,†

v.

Everett Smith Group, Ltd., Thomas J. Hauske, Jr.,
Randall M. Perry, Anders Segerdahl, Steven J.
Hartung and and Albert Trostel & Sons Company,
Defendants-Respondents-Cross-Appellants.†

Court of Appeals

*No. 2006AP3156. Oral argument April 16, 2008.
—Decided May 13, 2008.*

2008 WI App 84

(Also reported in 754 N.W.2d 235.)

† Petition for review and a † Petition for cross review were
granted 8/18/08.

636

On behalf of the plaintiff-appellant-cross respondent, the cause was submitted on the briefs of *Robert H. Friebert* and *Matthew W. O'Neill* of *Friebert, Finerty & St. John, S.C.*, Milwaukee. There was oral argument by *Matthew W. O'Neill.*

On behalf of the defendants-respondents-cross-appellants, the cause was submitted on the briefs of *Thomas L. Shriner, Jr., G. Michael Halfenger, Rebecca Wickhem House* and *Suzanne Nowak McManus* of *Foley & Lardner LLP*, Milwaukee. There was oral argument by *Thomas L. Shriner, Jr.*

Before Curley, P.J., Wedemeyer and Fine, JJ.

¶ 1. FINE, J. Edward U. Notz appeals, pursuant to our leave, a non-final order dismissing the first two claims of his three-claim amended complaint against the Everett Smith Group, Ltd., Thomas J. Hauske, Jr., Randall M. Perry, Anders Segerdahl, and Steven J. Hartung. Those two claims allege that the defendants breached their fiduciary duties to Notz. The Smith Group, Hauske, Perry, Segerdahl, and Hartung cross-appeal the circuit court's denial of their motion to dismiss Notz's third claim, which seeks dissolution of Albert Trostel & Sons Company. We reverse in part the circuit court's dismissal of the first two claims, and, because Notz no longer has standing to maintain his third claim, we vacate that part of the order denying the defendants' motion to dismiss that claim.

## I.

¶ 2. This is a dispute between a former minority shareholder of Albert Trostel & Sons on the one hand and the former majority shareholder, the Smith Group, on the other hand. As we discuss in connection with the cross-appeal, Part II.B. below, Albert Trostel & Sons merged with the Smith Group, Trostel's pre-merger majority shareholder, and Notz surrendered his shares pursuant to his exercise of his dissenter's rights under WIS. STAT. §§ 180.1301–180.1331. Notz started this action before the merger, and the defendants do not contend that the merger affects the first two claims of Notz's amended complaint, which allege a breach of their fiduciary duties to him. Notz does not contend on this appeal that the merger was unlawful.

¶ 3. Notz's appeal concerns only the sufficiency of his amended complaint. Accordingly, our review is *de novo,* and we must take as true the facts alleged in the

amended complaint, assessing them in a light most favorable to Notz. *See Godoy ex rel. Gramling v. E.I. du Pont de Nemours & Co.*, 2007 WI App 239, ¶ 2, 306 Wis. 2d 226, 229, 743 N.W.2d 159, 161, *review granted*, 2008 WI 40, 308 Wis. 2d 609, 749 N.W.2d 661 (No. 2006AP2670). This is why the Dissent's discussion of the Special Litigation Committee and that Committee's conclusions, Dissent, ¶¶ 31, 38, and their effect on the Dissent's analysis are immaterial to our task.

¶ 4. Notz is a descendant of Trostel's founder. He and other descendants of the founder owned 11.1% of Trostel stock, of which Notz owned approximately half, or 5.5%. The Smith Group owned the other 88.9% of Trostel stock. As for the other defendants, the amended complaint alleges their roles as follows (and, despite the merger, which affects only Notz's third claim and the cross-appeal, we use the amended complaint's present-tense, pre-merger references):

- Hauske is a Trostel director and, "[u]pon information and belief, . . . is also an officer and director of the Smith Group."

- Perry is a Trostel director and officer and, "[u]pon information and belief, . . . is also an officer and director of the Smith Group."

- Segerdahl is Trostel's "Chairman and Chief Executive Officer" and, "[u]pon information and belief, . . . is also the Chairman and Chief Executive Officer of the Smith Group."

- Hartung is a Trostel director and officer and, "[u]pon information and belief, . . . is also the Vice President, Secretary and General Counsel of the Smith Group."

¶ 5. As material to this appeal, Notz alleges that in March of 2003, the Smith Group "began efforts to acquire" the 11.1% of Trostel stock held by the others,

including Notz's 5.5%. The amended complaint alleges that the Smith Group's "offer was not responded to because it was deemed grossly inadequate." According to the amended complaint, the Smith Group made "a second offer" in July of 2004 for the minority shareholders' stock, "including the stock owned by the Plaintiff," and asserts that this second offer "was made in bad faith and for an unfair price."

¶ 6. The crux of the dispute is Notz's contention that the Smith Group was trying to freeze him (and the other minority shareholders, who are not parties in this case) out in order to get for itself increased value attributable to Trostel's profitable plastics business, which the Smith Group had plans to expand. In this connection, the amended complaint makes the following allegations:

- By 2003, Albert Trostel & Sons conducted its manufacturing business *via* wholly-owned subsidiaries in three product lines, which the amended complaint describes as: (1) "The Leather Group"; (2) "The Plastics Group"; and (3) "The Rubber Group."

- Trostel's plastics-related business was conducted by its wholly owned subsidiary, Trostel Specialty Elastomers Group, Inc., and the Elastomers Group's wholly owned subsidiary, Techniplas.

- The defendants, who controlled Albert Trostel & Sons, viewed the rubber and plastics businesses as fertile fields for profit.

- Trostel's leather business "was under severe economic pressure from its customers and from competition from China, leading to negative forecasts as to its future growth potential and continued profit margins."

- Around June of 2004, the Smith Group and the individual defendants saw a chance to buy Dickten & Masch Manufacturing Company, which the complaint describes as "a competitor of [the Elastomers Group] in the precision molding and thermoplastics industry."

- The purchase of Dickten & Masch "was consistent with [Trostel's] stated 'focused acquisition strategy in the rubber and plastics platform that would provide additional scale for future growth,' " and the "stated intent [by Trostel's management] to 'emerge as a leader in the thermoplastics industry' in order to ensure the 'future growth' of" Trostel. (Quoting statements by Perry and Thomas Sloane, who the amended complaint says is the president of the Elastomers Group.)

- The due-diligence investigation of the potential Dickten & Masch purchase was paid for by Albert Trostel & Sons.

¶ 7. The amended complaint alleges that after Notz (and the other minority shareholders) rejected the July of 2004 buyout offer:

> [T]he Smith Group planned to freeze the Plaintiff out of the plastics business by transferring the entire plastics division from [Albert Trostel & Sons] to the Smith Group in two steps. First, the Smith Group rather than [Albert Trostel & Sons] would acquire Dickten & Masch. Second, the Smith Group would combine the Dickten operations with the Trostel [Elastomers Group] operations to achieve the synergy savings identified in the due diligence investigation by acquiring the [Albert Trostel & Sons] plastics division.

According to the amended complaint, this scheme was carried out as follows:

- "Without any notice to the Plaintiff or other minority shareholders of [Albert Trostel & Sons], Defendants Hauske, Perry, Segerdahl, and Hartung, acting in their capacity as officers and directors of [Albert Trostel & Sons], 'rejected' the opportunity to acquire Dickten & Masch, and then, acting in their capacity as officers and directors of the Smith Group, authorized the acquisition of Dickten & Masch by the Smith Group."

- The Smith Group bought Dickten & Masch.

- "On information and belief, the Defendants immediately began the process of integrating the business operations of Dickten & Masch with the operations of [the Elastomers Group] and Techniplas so as to reap the benefits of the synergies between the three thermoplastics operations identified in the due diligence work paid for by [Albert Trostel & Sons]."

- The defendants then had "Dickten & Masch purchase the plastics manufacturing assets of [the Elastomers Group] (including Techniplas) from [Albert Trostel & Sons]."

- "Upon information and belief," the purchase by Dickten & Masch of the "plastics manufacturing assets" of the Elastomers Group and Techniplas "was largely funded by upstreaming the funds of [Albert Trostel & Sons], using a one-time dividend issued to the shareholders of [Albert Trostel & Sons], including the Smith Group."

¶ 8. Notz's amended complaint alleges that the purchase of Dickten & Masch by the Smith Group, and Dickten & Masch's earlier purchase of Trostel's "plastics manufacturing assets," were done for three main reasons:

644

(1) "to retaliate for Plaintiff's refusal to sell his stock at a low price";

(2) to harm Notz by "depriving [him] of the ability to participate in the future expansion of the Plastics Division" of Albert Trostel & Sons; and

(3) "to force Plaintiff to sell his shares to the Smith Group for less than fair value."

Notz also claims that the due-diligence expense shouldered by Albert Trostel & Sons in connection with the Smith Group's purchase of Dickten & Masch was a "constructive dividend" to the Smith Group, the value of which was not also distributed to Notz and the other minority shareholders. As a result, Notz claims that both the Smith Group and the individual defendants breached their fiduciary duties to him. As noted, the circuit court dismissed these two claims.

¶ 9. Notz's amended complaint also claims that he is entitled to a judicial dissolution of Albert Trostel & Sons pursuant to Wis. Stat. § 180.1430.[1] The circuit court did not dismiss this claim, and we discuss in Part II.B. below additional facts that are material to our disposition of the defendants' cross-appeal.

## II.

A. *Notz's Appeal.*

¶ 10. As we have already noted, the circuit court granted in part the defendants' motion to dismiss Notz's

---

[1] As material here, Wis. Stat. § 180.1430 provides:

The circuit court . . . may dissolve a corporation in a proceeding:

. . . .

(2) By a shareholder, if any of the following is established:

. . . .

amended complaint by dismissing the two claims asserting that the Smith Group and the individual defendants breached their fiduciary duties to him by taking from Albert Trostel & Sons a corporate opportunity and assets, and using that opportunity and those assets for their benefit and to his harm.[2] The circuit court reasoned that "the [amended] complaint alleges injuries that were common to the shareholders generally and

(b) That the directors or those in control of the corporation have acted, are acting or will act in a manner that is illegal, oppressive or fraudulent.

[2] *Gauger v. Hintz*, 262 Wis. 333, 351–352, 55 N.W.2d 426, 435–436 (1953), described the "corporate opportunity doctrine" as " 'but one phase of the cardinal rule of 'undivided loyalty' on the part of fiduciaries' ":

"[O]ne who occupies a fiduciary relationship to a corporation may not acquire, in opposition to the corporation, property in which the corporation has an interest or tangible expectancy or which is essential to its existence. This corporate right or expectancy, this mandate upon directors to act for the corporation, may arise from various circumstances; such as, for example, the fact that directors had undertaken to negotiate in the field on behalf of the corporation, or that the corporation was in need of the particular business opportunity to the knowledge of the directors, or that the business opportunity was seized and developed at the expense, and with the facilities of the corporation. So, it has been said that a director cannot be allowed to profit personally by acquiring property that he knows the corporation will need or intends to acquire, and that this interest, actual or in expectancy, must have existed while the person involved was a director or officer.

. . .

If it is the duty of officers in a particular case to enter into a contract, or to purchase or take a transfer of property, on behalf of the corporation, and, in violation of this duty, they enter into the contract to acquire the property personally, they will not be permitted to retain the benefit, but will be held as trustees for the corporation."

(Quoted source omitted; ellipses by *Gauger*.)

the fact that some shareholders may have benefited in a way that balanced out that injury for them does not create a direct injury as that term was developed through the cases." On our *de novo* review, we disagree in part and thus reverse in part the order dismissing Notz's first two claims.

■■■

¶ 11. A shareholder who believes that he or she is being short-changed has two distinct remedies: (1) if the injury is "primarily to the corporation," the disaffected shareholder's remedy is a derivative action in favor of the corporation, *Jorgensen v. Water Works, Inc.*, 2001 WI App 135, ¶ 10, 246 Wis. 2d 614, 620, 630 N.W.2d 230, 233; (2) if the injury is "primarily to the complaining shareholder," however, he or she may sue directly for whatever direct injuries he or she has suffered, *ibid.*[3] A disaffected shareholder may assert both derivative- and direct-action claims. *Rose v. Schantz*, 56 Wis. 2d 222, 225–230, 201 N.W.2d 593, 595–598 (1972).

■■■

¶ 12. A shareholder's rights *vis-à-vis* corporate directors are founded on the principle that "[a] corporation's directors owe individual shareholders a fiduciary duty to act in good faith and to deal fairly with them." *Jorgensen*, 2001 WI App 135, ¶ 10, 246 Wis. 2d at 620, 630 N.W.2d at 233. Stated another way, when

---

[3] A derivative action is governed by Wis. Stat. §§ 180.0740–180.0747. Notz originally started this action as a derivative suit. It was dismissed by the circuit court, and Notz then filed the amended complaint that is the subject of this appeal. He has not appealed the dismissal of his derivative action, and his appellate brief does not contend that the dismissal of the derivative action was error. Accordingly, the appropriateness of a derivative action is not before us.

" 'some individual right of a stockholder is being impaired by the improper acts of a director, the stockholder can bring a direct suit on his own behalf because it is his individual right that is being violated.' " *Ibid.* (quoted source omitted).

■

¶ 13. Majority shareholders also owe a fiduciary duty to the minority shareholders. *Production Credit Ass'n of Lancaster v. Croft,* 143 Wis. 2d 746, 754, 423 N.W.2d 544, 547 (Ct. App. 1988). *Production Credit* recognized the fuller exegesis by Justice Louis Dembitz Brandeis in *Southern Pacific Co. v. Bogert,* 250 U.S. 483, 487–488 (1919):

> The majority has the right to control; but when it does so, it occupies a fiduciary relation toward the minority, as much so as the corporation itself or its officers and directors. If through that control a sale of the corporate property is made and the property acquired by the majority, the minority may not be excluded from a fair participation in the fruits of the sale.

*See Production Credit,* 143 Wis. 2d at 754, 423 N.W.2d at 547.

■

¶ 14. In analyzing whether Notz's amended complaint supports his direct-action claims, we must determine whether it states claims for injuries primarily to him as opposed to the corporation. *See Rose,* 56 Wis. 2d at 228–229, 201 N.W.2d at 597 ("[W]here some individual right of a stockholder is being impaired by the improper acts of a director, the stockholder can bring a direct suit on his own behalf because it is his individual right that is being violated."); *Jorgensen,* 2001 WI App 135, ¶ 10, 246 Wis. 2d at 620, 630 N.W.2d at 233. As we have already seen, our review is *de novo.*

¶ 15. It is true, as the circuit court observed, that most of the allegations in Notz's complaint assert contentions that Albert Trostel & Sons was harmed by the Smith Group and the individual defendants. Accordingly, any remedy Notz would have in connection with those allegations is limited to a derivative-action lawsuit, even though the harm to Trostel had an "impact" on Notz. *See Rose,* 56 Wis. 2d at 229, 201 N.W.2d at 597–598. *Rose* points the way to our analysis.

¶ 16. The dispute in *Rose* involved a shareholder's contention that the officers and directors of the corporation deliberately drove the corporation into the ground so as to permit the corporation's president "to successfully engage in a competing business." *Id.,* 56 Wis. 2d at 223–224, 201 N.W.2d at 595. Recognizing that "[d]irectors in this state may not use their position of trust to further their private interests," *id.,* 56 Wis. 2d at 228, 201 N.W.2d at 597, *Rose* held that even though damage to the corporation "may have a subsequent impact on the value of the stockholders' shares," that collateral harm "is not enough to create a right to bring a direct, rather than derivative, action," *id.,* 56 Wis. 2d at 229, 201 N.W.2d at 598. *See also Einhorn v. Culea,* 224 Wis. 2d 856, 867–868, 591 N.W.2d 908, 913 (Ct. App. 1999) ("[A] claim based on the improper diversion of corporate assets belongs to the corporation and not to the individual shareholder."), *rev'd on other grounds,* 2000 WI 65, 235 Wis. 2d 646, 612 N.W.2d 78; *Jorgensen v. Water Works, Inc.,* 218 Wis. 2d 761, 776, 582 N.W.2d 98, 104 (Ct. App. 1998) ("waste and mismanagement of corporate assets [are] injuries primarily to the corporation").

██

¶ 17. The situation here is akin to *Rose.* If the allegations in Notz's amended complaint are true, and,

as noted, we must accept them as true and give to them the benefit of every doubt that helps Notz, the Smith Group and the individual defendants stripped Albert Trostel & Sons of its most important assets and diverted to the Smith Group Trostel's corporate opportunity to buy Dickten & Masch. But that is an injury to *Trostel,* and the resulting harm to Notz is derivative; *all* of the shareholders were affected equally—albeit, as the circuit court observed, the Smith Group benefited because of the diversion. Under Wisconsin law, as the circuit court also observed, that ultimate benefit to the Smith Group and the individual defendants does not here, as the ultimate benefit to the defendants in *Rose* did not there, transform the harm to Trostel into a "primary" or direct harm to Notz. *See Gauger v. Hintz,* 262 Wis. 333, 351–352, 55 N.W.2d 426, 436 (1953) (fiduciaries who divert corporate opportunities to themselves hold those opportunities in trust for the corporation).

■

¶ 18. Notz's amended complaint does, however, allege one "primary" harm to him. He asserts that using Trostel's funds for the Dickten & Masch due-diligence investigation was a constructive dividend to the Smith Group because the Smith Group was the beneficiary of that expenditure. Unlike Notz's complaint about the one-time dividend that the Smith Group used to fund, at least in part, its purchase of Dickten & Masch, a dividend that Notz also received, Notz did not get an offsetting payment in connection with the due-diligence expenses. Thus, this situation is akin to that in *Jorgensen,* where we recognized in both appellate decisions involving that case that dividend-like payments to one set of shareholders to the exclusion of another set was a primary injury to the latter, assuming, of course,

equal entitlement under the applicable governing corporate articles and bylaws. *Jorgensen*, 218 Wis. 2d at 776–777, 582 N.W.2d at 104; 2001 WI App 135, ¶ 16, 246 Wis. 2d at 624, 630 N.W.2d at 235 ("An injury due to a director's action is primarily an injury to an individual shareholder if it affects a shareholder's rights in a manner distinct from the effect upon other shareholders."). *Jorgensen* also recognized that a "constructive dividend" received by some but not all similarly situated shareholders can be direct harm to the excluded shareholders by citing with approval *McDonald v. U.S. Die Casting & Development Co.*, 541 So. 2d 1064, 1068–1070 (Ala. 1989), where the receipt of a constructive dividend by the majority shareholder but not the minority shareholder permitted a direct action by the minority shareholder. *Jorgensen*, 218 Wis. 2d at 779, 582 N.W.2d at 105. Significantly, the constructive dividend in *McDonald* was corporate money used by the majority shareholder to exercise a stock-buy-out option in order to get the stock held by the minority shareholder. *Id.*, 541 So. 2d at 1066, 1069–1070.[4]

¶ 19. Notz's amended complaint asserts a direct-action claim against the defendants. Accordingly, as to that claim, we reverse the circuit-court order dismiss-

---

[4] The law in connection with direct-action suits is the same under Alabama law as it is in Wisconsin:

> Ordinarily, a stockholder may not bring an action in his own name for an alleged fraudulent transfer of corporate property to another stockholder; such a suit must be by or in behalf of the corporation. However, if the stockholder alleges that wrongs have been committed by the corporation as a direct fraud upon him, and that such wrongs do not affect other stockholders, that one stockholder may maintain a direct action in his individual name.

*McDonald v. U.S. Die Casting & Dev. Co.*, 541 So. 2d 1064, 1068–1069 (Ala. 1989) (internal citations omitted).

651

ing his amended complaint. The remaining claims involve primary harm to the corporation, and we affirm the circuit court's order insofar as it dismissed those claims.

B. *The Defendants' Cross-appeal.*

¶ 20. As we have seen, Notz's third claim, which is the subject of the defendants' cross-appeal, sought dissolution of Albert Trostel & Sons under WIS. STAT. § 180.1430. As material here, and as we have already set out in footnote 1, § 180.1430 provides:

> The circuit court . . . may dissolve a corporation in a proceeding:
>
> . . . .
>
> **(2)** By a shareholder, if any of the following is established:
>
> . . . .
>
> (b) That the directors or those in control of the corporation have acted, are acting or will act in a manner that is illegal, oppressive or fraudulent.

While contending that Notz's amended complaint does not pass muster under this section, the defendants also argue that the matter is moot because after the circuit court entered its order, Albert Trostel & Sons and the Smith Group merged, with Albert Trostel & Sons being the surviving corporation, under procedures permitted by the Business Corporation Law, and, as a result, Notz is no longer a "shareholder" entitled to invoke § 180.1430(2)(b).

¶ 21. We agree, but reframe the issue as one of standing, rather than one of mootness in order to be consistent with the rest of the Business Corporation

Law. Thus, in declaring who may bring a shareholder's derivative suit, WIS. STAT. § 180.0741 requires, among other things, that the plaintiff must be, as material here, a shareholder and denominates that requirement in the statute's title as "Standing." (Bolding omitted.)[5] This is similar to the grant of authority in WIS. STAT. § 180.1430(2) to a "shareholder" to seek a judicial order of dissolution. "Standing" is also the concept used by other courts in determining whether a person may seek a corporate dissolution. *See Baye v. Airlite Plastics Co.*, 618 N.W.2d 145, 151 (Neb. 2000) (citing cases); *Cook v. Regional Commc'ns, Inc.*, 539 S.E.2d 171, 172–173 (Ga. Ct. App. 2000).

¶ 22. Whether Notz has standing to continue to seek dissolution of Albert Trostel & Sons requires us to apply the applicable statutes, and this presents an issue of law. *See State v. Turnpaugh*, 2007 WI App 222, ¶ 2, 305 Wis. 2d 722, 725, 741 N.W.2d 488, 490. Unless there

---

[5] We recognize that titles are substantively "not part of the statutes." WIS. STAT. § 990.001(6). Nevertheless, they may be helpful in discerning appropriate terminology. *See Rouse v. Theda Clark Med. Ctr., Inc.*, 2007 WI 87, ¶ 20, 302 Wis. 2d 358, 372, 735 N.W.2d 30, 37; *Aiello v. Village of Pleasant Prairie*, 206 Wis. 2d 68, 73, 556 N.W.2d 697, 700 (1996).

WISCONSIN STAT. § 180.0741 provides:

**Standing.** A shareholder or beneficial owner may not commence or maintain a derivative proceeding unless the shareholder or beneficial owner satisfies all of the following:

(1) Was a shareholder or beneficial owner of the corporation at the time of the act or omission complained of or became a shareholder or beneficial owner through transfer by operation of law from a person who was a shareholder or beneficial owner at that time.

(2) Fairly and adequately represents the interests of the corporation in enforcing the right of the corporation.

is an ambiguity or constitutional infirmity, we apply statutes as they are written. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 662, 681 N.W.2d 110, 123–124.

¶ 23. A "shareholder" is defined by the Business Corporation Law as "the person in whose name shares are registered in the records of a corporation or the beneficial owner of shares to the extent of the rights granted by a nominee certificate on file with a corporation." Wis. Stat. § 180.0103(14). Notz does not dispute that he is not now a shareholder in either the pre- or post-merger Albert Trostel & Sons. He contends, however, that, using the defendants' terminology, his right to seek dissolution under Wis. Stat. § 180.1430(2) is not moot because: (1) he retains shareholder status as a "dissenting shareholder"; and (2) under Wis. Stat. § 180.1106(1)(d), actions against pre-merger business entities are preserved despite the merger. We disagree.

¶ 24. First, in the context of Wis. Stat. § 180.1430(2), the term "dissenting shareholder" is meaningless. Simply put, Notz is not a "shareholder," which he must be in order to maintain an action for dissolution because he has *no* "shares [] registered in the records" of the post-merger Albert Trostel & Sons. *See* Wis. Stat. § 180.0103(14). Second, as we explain below, Wis. Stat. § 180.1106(1)(d) is not applicable.

¶ 25. It is a canon of statutory construction that a specific statute controls a general statute. *State v. Machgan*, 2007 WI App 263, ¶ 7, 305 Wis. 2d 722, 725, 743 N.W.2d 832, 835. Wisconsin Stat. § 180.1106(1)(d) is a general statute that does not by its terms purport to govern shareholder actions seeking a corporation's dissolution. It provides:

> A civil, criminal, administrative, or investigatory proceeding pending by or against any business entity that is a party to the merger may be continued as if the merger did not occur, or the surviving business entity may be substituted in the proceeding for the business entity whose existence ceased.

This paragraph, designed to ensure the survival of the broad range of proceedings listed, does not address who is entitled to *maintain* a previously commenced action; it merely says that those actions survive. Thus, if Notz owned shares in Albert Trostel & Sons, his dissolution action would not abate merely because of the merger. But Notz *does not* own any shares in either the pre- or post-merger Albert Trostel & Sons; he surrendered those shares and the "fair value" of those shares is currently being litigated in another forum, as provided for by WIS. STAT. § 180.1330.

¶ 26. Since Notz is no longer a Trostel "shareholder," as that term is defined by the Business Corporation Law, he does not have standing to seek its dissolution. *See* WIS. STAT. § 180.1430(2); *see also Baye*, 618 N.W.2d at 151 (citing cases); *Cook*, 539 S.E.2d at 172–173. Accordingly, we vacate that part of the circuit court's order denying the defendants' motion to dismiss Notz's dissolution claim, and remand for the entry of an order dismissing that claim.

*By the Court.*—Order affirmed in part, reversed in part, vacated in part, and cause remanded with directions.

¶ 27. WEDEMEYER, J., *(concurring/dissenting)*. I would affirm the trial court on the appeal, and therefore respectfully dissent from ¶¶ 17–18 of part II.A of the majority opinion for reasons set forth below. I

agree with the majority's analysis and disposition on the cross-appeal in part II.B., and therefore concur in that portion of the opinion.

¶ 28. The majority opinion concludes that Notz's amended complaint alleges one "primary" harm to Notz so as to permit the continuation of the direct action in this case. Majority Opinion, ¶ 17. This "primary" harm was the due diligence costs associated with Trostel's review of whether to acquire Dickten & Masch. I cannot agree with this analysis.

¶ 29. It is important to keep in mind the chronology of the events as they unfolded in this case. In June 2004, the defendants became aware of an opportunity to acquire Dickten & Masch, which was in the same line of business as Trostel's plastics. Due diligence commenced to determine whether the acquisition would be a wise option. The due diligence was a corporate act, based on corporate judgment. After due diligence had been completed, the Trostel Board of Directors decided that Trostel should not acquire Dickten & Masch. The Board, however, authorized the Smith Group to acquire the business. The acquisition closed in October 2004.

¶ 30. In 2005, the Smith Group's Dickten & Masch division purchased Trostel's plastics division in a sale approved by the corporate boards of Trostel and the Smith Group. On August 9, 2005, Notz served a shareholder demand letter on Trostel, as required by Wis. Stat. § 180.0742(1), setting forth allegations he would bring in a derivative claim. Notz alleged that this course of events resulted in a breach of fiduciary duty and a claim for dissolution. He claimed that the due diligence to analyze the potential acquisition of Dickten & Masch constituted a constructive dividend to the Smith Group, which he did not receive. He alleged that Thomas J. Hauske, Jr., Randall M. Perry, Anders Seg-

erdahl and Steven J. Hartung (the majority shareholders of Trostel and the Smith Group, hereinafter "defendants") engaged in self-dealing and mismanagement by not acquiring Dickten & Masch, then allowing the Smith Group to acquire the division, and also allowing the Smith Group to acquire Trostel's plastics division. He claimed that all of these actions were taken in order to acquire his minority shares in Trostel that he refused to sell to the defendants.

¶ 31. In accordance with the statutory scheme pertinent to derivative claims, WIS. STAT. § 180.0744, Trostel responded to Notz's allegations by electing three independent directors to its board. The three independent directors formed a Special Litigation Committee to investigate Notz's claims. The Committee conducted an investigation, which took eight months and included 22 meetings, many interviews and the review of numerous documents. The cost to Trostel for the review exceeded $700,000. The result was a report dated June 15, 2006, in which the Committee members advised that the actions taken by the Board with respect to the questioned transactions were appropriate. The Committee indicated that it did not find any "intentional behavior or maliciousness on the part of the Company fiduciaries to disadvantage the minority shareholders." The Committee concluded that maintaining a derivative proceeding would not be in the best interest of Trostel.

¶ 32. While this investigation was ongoing, Notz also filed a complaint in the circuit court alleging a direct cause of action against the Smith Group and the individual defendants for breach of fiduciary duty and dissolution. When the determination from the Committee was reported, the defendants in the direct action moved to dismiss Notz's direct action complaint on the

657

basis that the claims alleged failed to state a claim because: (1) the breach of fiduciary duty claims were derivative in nature and, based on the Committee's conclusion that it would not be in Trostel's best interest to pursue them, these claims should be dismissed; and (2) Wisconsin law does not recognize Notz's claim for shareholder oppression. The circuit court granted the motion to dismiss in September 2006. The circuit court ruled that Notz had failed to allege any distinct injury to himself. Thus, a written order dismissing the complaint was entered on October 4, 2006. Notz subsequently filed an amended complaint, restating the breach of fiduciary duty causes of action and adding a claim seeking judicial dissolution of Trostel due to "oppressive conduct."

¶ 33. The defendants again moved to dismiss Notz's amended complaint. The trial court dismissed the breach of fiduciary duty causes of action, ruling that they were derivative in nature, not direct claims. The trial court allowed the dissolution cause of action to remain. As noted above, I would affirm the trial court's dismissal of the breach of fiduciary duty causes of action in total. I agree with the trial court that "the complaint alleges injuries that were common to the shareholders generally and the fact that some shareholders may have benefited in a way that balanced out that injury for them does not create a direct injury as that term was developed through the cases." The majority does a thorough job in analyzing why the trial court's opinion in this regard was correct.

¶ 34. However, in ¶¶ 17–18 of the majority opinion, this court holds that the allegation in the amended complaint contained a sufficient allegation of direct injury to Notz to withstand the motion to dismiss. Namely, the direct injury came in the form of a "con-

structive dividend" relating to the due diligence costs expended in relation to the Dickten & Masch acquisition and the sale of the Trostel plastics division. It is with this portion of the majority opinion that I must respectfully dissent. Before explaining my reasons, it is important to clarify exactly which cause of action the majority allows to survive. Notz's amended complaint asserts three causes of action: (1) a direct action of breach of fiduciary duty against the Smith Group; (2) a direct action of breach of fiduciary duty against Hartung, Hauske, Perry & Segerdahl, and (3) a dissolution action based on oppression. With regards to the dissolution action, the majority dismisses the dissolution action on the basis that Notz no longer has standing to pursue this claim. I concur with this determination.

¶ 35. The majority upholds the trial court's dismissal of the direct action against the Smith Group and the individual defendants because the injury alleged— breach of fiduciary duties to Notz by taking from Trostel a corporate opportunity and assets, and using that opportunity and those assets for their benefit and to Notz's harm—is an injury to the Trostel corporation, rendering any resulting harm to Notz as derivative. I also agree with this analysis.

¶ 36. The majority, then, however, carves out from the direct action causes of action, a single allegation, which it believes constitutes a "primary" harm to Notz. This primary claim is from the direct action portion in the amended complaint and is based on the allegation therein that the Smith Group "orchestrat[ed] constructive dividends from [Trostel] to the Smith Group, and by acting with the intent to harm the plaintiff" and that the individual defendants "allow[ed] improper constructive dividends to be paid to the Smith Group (in the form of the costs of the due diligence for

the Dickten & Masch acquisition, the costs of integrating the business operations of Dickten & Masch with Trostel SEG and Techniplas prior to the Smith Group's acquisition of those plastics operations, and the cost of the valuation of Trostel SEG), and by approving the sale of Trostel SEG to the Smith Group without a fair process." I cannot agree that the foregoing allegations either sufficiently allege a primary harm against the defendants so as to survive the motion to dismiss. Further, I do not believe that such allegations can be severed from the general analysis of the direct action claims.

¶ 37. First, Notz's claim of improper constructive dividends asserted in the amended complaint is an allegation of a legal conclusion, rather than a sufficient fact. It is also a faulty legal conclusion. The allegation presumes that a shareholder actually owns the corporation's assets. That is not so. "An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003). Thus, if the corporation, in the exercise of business judgment, expends money on due diligence relative to a potential purchase, an individual shareholder does not acquire a direct claim, even if the expenditure involves one of self-dealing or mismanagement. Rather, such expenditure affects the corporation as a whole, and in turn, the shareholders derivatively.

¶ 38. Second, the legislature in Wisconsin has elected, as a matter of policy, to set forth specific rubrics with regard to corporations and allegations of injury to shareholders. This statutory framework is set forth in ch. 180 of the Wisconsin Statutes. The statutory framework "requires the circuit court to defer to the business judgment of a properly composed and properly operat-

ing special litigation committee." *Einhorn*, 224 Wis. 2d 856, ¶ 20. As pertinent to the facts of this case, the statutory scheme was followed in Notz's derivative claim, wherein independent directors were appointed and an exhaustive inquiry was conducted to determine whether the challenged transactions were improper. The independent review by the special litigation committee concluded that it would not be in the best interests of the corporations to pursue the allegations made by Notz. In the derivative action, after a thorough review, the ultimate conclusion was that the transactions were appropriate. If the Smith group "used" Trostel funds to its benefit, then the harm, in the form of fees spent on due diligence, damaged the corporation as a whole, and not Notz individually. Even if the individual defendants, as members of the Smith group benefited from the due diligence, and Notz did not, any wrongful conduct on their part in the form of a constructive dividend was detrimental to Trostel, not just Notz. Accordingly, I see no individual injury to Notz based on the allegations he sets forth in the amended complaint. The special litigation committee concluded that the conduct challenged was proper and did not "disadvantage the minority shareholders." We must defer to the business judgment of that committee.

¶ 39. Third, I cannot agree that Notz's attempt to excise out of the transaction the costs expended by Trostel on due diligence, by asserting that such costs resulted in a constructive dividend is the equivalent to the dividend payments in *Jorgensen. Jorgensen* is completely distinguishable from the facts here. The holding in *Jorgensen* is that a shareholder can only maintain a direct breach of fiduciary duty claim for those injuries that have a primary and unique effect on the complaining shareholder that is distinct from their general effect

on the corporation. *Id.*, 2001 WI App 135, ¶ 18, 246 Wis. 2d 614, 630 N.W.2d 230. In *Jorgensen*, we concluded that the minority shareholders could maintain a direct claim to recover for payments of non-pro-rata profit distributions, which plainly have no injurious effect on the corporation, made to the defendant majority shareholders, but not to the plaintiffs. *Id.*

¶ 40. Notz's assertions regarding the "constructive dividends" are simply not the same as the profit distributions in *Jorgensen*. The "constructive dividends" were not profit payments that the Smith group defendants received and Notz did not. Rather, they were costs paid by the Trostel corporation. Thus, if costs paid by Trostel accrued to the benefit of the Smith group, to the detriment of Trostel, the harm is to the corporation primarily and not Notz individually. As the respondents in this case point out:

> Importantly, nowhere does Mr. Notz allege that he has not received the same distributions as have all other shareholders. Nowhere does he allege that he has been singled out or treated somehow differently in his capacity as a shareholder than all other shareholders, including both the other minority shareholders and the majority shareholder, [Smith Group]. In fact, Mr. Notz acknowledges that he received his share of the proceeds from the sale of Trostel [plastics] to [Smith Group].

¶ 41. Although this court can sympathize with Notz's position that he was "squeezed out" and understand how he may not want that to happen given the history of the Trostel corporation, the allegations here that the defendants intended to harm him in some fashion cannot turn his claims into "direct" claims. Whether an action is a direct or a derivative claim depends not on the motivation behind the conduct, but on the effect of the conduct. In *Einhorn*, the plaintiff

alleged that acts of corporate waste were part of the main defendant's "improper effort . . . to squeeze [him] out, *id.*, 224 Wis. 2d at 861, and were "intentionally designed to dilute the value of [his] shares," *id.* at 864. We rejected the contention that bad intent should allow a direct action to be pursued. We held that regardless of such intent, "the depletion of corporate assets which results in dilution of a shareholder's stock can only be asserted as a derivative, not individual, action." *Id.* at 864.

¶ 42. Notz's claim, therefore, that Trostel's expenditure of due diligence funds, which ultimately benefitted the defendants, but not him, does not constitute a direct claim. Any wrongful expenditure of funds was an injury primarily to the Trostel corporation itself and not a direct injury to Notz. As noted above, as a result, the claims asserted by Notz are derivative in nature, and that derivative claim has already been pursued and rejected by the independent Special Litigation Committee. Accordingly, I would affirm the trial court's dismissal of the direct action claims in toto; thus, I respectfully dissent from that portion of the majority opinion which allows Notz to maintain a direct action claim. I concur in the majority's decision on the cross-appeal, which dismisses the dissolution action.