In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2272

ROBERT KRIEN, *et al.*,

*Plaintiffs*,

*v.*

HARSCO CORPORATION,

*Defendant / Third-Party Plaintiff-Appellant*,

*v.*

RILEY CONSTRUCTION COMPANY,

*Third-Party Defendant-Appellee*.

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:10-cv-01004-LA — **Lynn Adelman**, *Judge*.

ARGUED FEBRUARY 12, 2014 — DECIDED MARCH 13, 2014

Before POSNER, FLAUM, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. Before us is an appeal in a personal injury suit brought by an employee of Riley Construction named Krien. Riley, the general contractor of a construction project in Wisconsin, had hired Harsco Corporation to sup-

ply scaffolding for the project. Krien, injured in a fall when a plank on a scaffold that he was standing on broke, sued Harsco. The parties settled his claim for $900,000. Even before the settlement, Harsco had filed a third-party complaint against Riley, seeking indemnification for any damages that Harsco might pay by way of judgment or settlement of Krien's suit, plus interest and attorneys' fees. On cross-motions by Riley and Harsco for summary judgment on the third-party claim (all that remained of the case originally brought by Krien), the district judge granted Riley's motion and denied Harsco's, precipitating this appeal. The basis of federal jurisdiction is diversity of citizenship. Wisconsin law governs the substantive issues.

Harsco's claim for indemnity is based on its contract with Riley. The suit turns on the terms of the contract.

In negotiating the contract, the parties started with a form contract of the Associated General Contractors of America, a trade association. See *Tellepsen Builders, L.P. v. Kendall/Heaton Associates, Inc.*, 325 S.W.3d 692, 693 (Tex. App. 2010); cf. *Fox Drywall & Plastering, Inc. v. Sioux Falls Construction Co.*, No. 12-4026-KES, 2012 WL 1457183, at *8–9 (D. S. Dak. Apr. 26, 2012). The form contract is very long—21 pages, mostly of fine print. Article 3, paragraph 3.25 (entitled "Use of Riley Construction's Equipment") provides that Harsco may use Riley's equipment only with Riley's "express written permission," and must "defend, indemnify and be liable to Riley Construction as provided in Article 9 for any loss or damage (including bodily injury or death) which may arise from" Harsco's use of Riley's equipment "except to the extent that such loss or damage is caused by the negligence of Riley Construction's employees operating

Riley Construction's equipment." A mirror-image provision, paragraph 4.8 ("Use of [Harsco's] Equipment"), provides that Riley and its employees may use Harsco equipment, including scaffolding, only with Harsco's "express written permission," and that if Riley or its employees "utilize any of [Harsco's] equipment, including … scaffolding …," Riley "shall defend, indemnify and be liable to [Harsco] as provided in Article 9 for any loss or damage (including bodily injury or death) which may arise from such use, except to the extent that such loss or damage is caused by the negligence of [Harsco's] employees operating [Harsco's] equipment."

But when we go to Article 9, to which both provisions that we've quoted from refer, we discover that the parties had crossed out its first paragraph (paragraph 9.1.1), which is entitled "Indemnity" and provides indemnity to Riley similar to the indemnity granted it by paragraph 3.25 but slightly broader: it excuses Harsco from having to indemnify Riley only if the loss or damage is caused by "the *sole* negligence or willful misconduct of [Riley]" (emphasis added). At the end of the contract, however, we find a series of provisions labeled "exhibits," and one of them (Exhibit A Section I(1)) requires Harsco to indemnify Riley for loss or damage only if "caused or alleged to be caused in whole or in part by the negligent acts or omissions of [Harsco]." A rider to the contract (Rider 3) provides that "the language of any indemnity … provisions notwithstanding, … [Harsco's] obligations shall be limited to [Harsco's] sole negligence and proportionate share of joint or concurrent negligence."

So the indemnity created by Exhibit A Section I(1), replacing the deleted paragraph 9.1.1, is more favorable to

Harsco than that paragraph. Yet Riley's essential argument, which the district judge accepted, is that the phrase in paragraph 4.8 "as provided in Article 9" confines paragraph 4.8 to indemnities mentioned in that article, and because the parties crossed out paragraph 9.1.1 (captioned "Indemnity"), Riley does not have to indemnify Harsco ever. The argument is implausible. Harsco—a $3 billion industrial company operating worldwide, see "Harsco," *Wikipedia*, http://en.wik ipedia.org/wiki/Harsco (visited March 13, 2014)—is unlikely to have allowed itself to be hoodwinked into giving up basic contractual rights. The argument also ignores Exhibit A Section I, which gives Riley a more limited right of indemnity against Harsco than Article 9 had given it.

A number of paragraphs in Articles 3 and 4 were crossed out; one imagines that had the parties intended to delete the indemnity in favor of Harsco they would have crossed out paragraph 4.8 as well, and they did not. It would be odd if by crossing out a paragraph in Article 9 they had meant to delete paragraphs in an earlier article without saying so, with the intention of granting two indemnities to Riley and none to Harsco. And since portions of Article 9 that were not crossed out bear on indemnity (such as paragraphs relating to insurance and modification), the reference to Article 9 in paragraphs 3.25 and 4.8 can't be just to the deleted paragraph 9.1.1. The deletion of that paragraph therefore doesn't require that paragraph 4.8 be treated as a dead letter.

So paragraph 4.8 is alive and well. But does it apply to Krien's accident? Here's what happened: Another employee of Riley placed a plank that was lying elsewhere at the construction site on what is called an "undecked" scaffold—that is, a scaffold that, having no deck (i.e., floor), is just a frame.

Krien stepped on the plank after it was laid on the scaffold, and the plank broke, causing him to fall seven feet and sustain very serious injuries. We don't know whether the plank was supplied by Harsco. It may not have been, because Riley didn't obtain all the scaffolding for the project from Harsco. Krien's suit against Harsco charged negligence, along with strict liability (for the defective plank, allegedly supplied by Harsco though as we said that's never been proved). Both the employee of Riley who was the immediate cause of the accident and Krien were "utilizing" Harsco's scaffolding, maybe with the required permission (though this has not been determined). For Harsco was not a conventional subcontractor, who works at the construction site, but a supplier of materials that workers employed by other subcontractors or by the general contractor use at the site. The parties have not made permission an issue, so we needn't try to resolve it.

The plank may have been supplied by Harsco and may have been defective, as claimed by Krien (who could not sue Riley in tort, because against his employer his only remedy for a work-related accident was a claim for workers' compensation). But there has never been a judicial resolution of these questions, because Krien's suit against Harsco was settled before there was any judgment. Even if supplied by Harsco, the plank may not have been defective, but simply carelessly laid by Krien's co-worker—an inference strengthened by the fact that OSHA determined that Riley's "lack of proper training and inspections on the scaffold led to the accident." And not only were the two Riley employees "utilizing" the plank—and the indemnity provision in paragraph 4.8 (indemnity of Harsco) is triggered by a Riley employee's "utiliz[ing] … equipment" supplied by Harsco—but the exception to the indemnity for an accident "caused by the neg-

ligence of [Harsco in] operating" that "equipment" is inap-
plicable because there is no suggestion that any employee of
Harsco did anything negligent with the plank after it was
delivered to the construction site.

In rejecting Harsco's indemnity claim the district judge
made the unexpected statement that "a strict liability claim
… is a type of negligence claim." Doubtless what he meant is
that a claim of strict products liability is much like a negli-
gence claim because it requires proof either that the product
was unreasonably dangerous or, what amounts to the same
thing, that it was defective. E.g., *Godoy ex rel. Gramling v. E.I.
du Pont de Nemours & Co.*, 743 N.W.2d 159, 162 (Wis. App.
2007), modified and affirmed, 768 N.W.2d 674 (Wis. 2009);
*Insolia v. Philip Morris Inc.*, 216 F.3d 596, 604–06 (7th Cir.
2000); *Scott v. White Trucks*, 699 F.2d 714, 718–19 (5th Cir.
1983). But so what? There is no evidence that it was Harsco's
plank, as we keep saying; and even if it was, and was defec-
tive, the exception (to Riley's duty of indemnity) for an acci-
dent caused by Harsco's negligence in "operating" the plank
would not encompass a defect in manufacture or transporta-
tion. For what could it mean to "operate" a wooden plank
other than to lay, move, or remove it, which was not done by
any employee of Harsco.

Riley insists that Krien's settlement with Harsco proves
that Harsco's negligence was responsible for the accident. It
proves no such thing, not only because the only relevant
negligence would be in operating Harsco equipment and be-
cause it's not even known whether the plank was supplied
by Harsco, but also because a settlement is not a determina-
tion of liability. It appears that Krien's damages substantially
exceed $900,000, so, provided there was uncertainty about

the outcome of his suit, Harsco may have settled a case that, had it spun the roulette wheel of litigation to judgment, it would have won. For all we know, Krien's lawyer himself thinks that Riley's negligence, and not any wrongdoing by Harsco, was responsible for the accident, but Krien could not sue Riley in tort because of the immunity conferred by the workers' compensation law. Wis. Stat. § 102.03(2); see, e.g., *County of Dane v. Labor & Industry Review Comm'n*, 759 N.W.2d 571, 582 (Wis. 2009); *Mulder v. Acme-Cleveland Corp.*, 290 N.W.2d 276, 278 (Wis. 1980).

Riley argues that the immunity shields it from having to indemnify Harsco for an injury to Riley's employee; for if Riley has to indemnify Harsco, it will be as if Krien had sued Riley instead of Harsco, which would indeed violate the workers' compensation law. But there is nothing in Wisconsin law to prevent Riley from waiving its workers' compensation exemption, *Larsen v. J. I. Case Co.*, 155 N.W.2d 666, 668 (Wis. 1968); *Schaub v. West Bend Mutual*, 536 N.W.2d 123, 124 (Wis. App. 1995), and it did so in paragraph 4.8. The indemnity conferred by that paragraph would be seriously incomplete without such a waiver. Employees of Riley are among the persons likely to be injured as a result of using a subcontractor's equipment, and being barred by workers' compensation law from bringing a tort suit against their employer they are likely to sue the subcontractor, as Krien did in this case.

Harsco may have been negligent after all, and Riley argues that it's unthinkable that someone whose negligence is responsible for a harm should be entitled to indemnification. Not so. Indemnification is a form of insurance. Liability insurance provides indemnity for damages caused by the in-

sured's negligence. The indemnity provisions in the contract between Riley and Harsco were the equivalent of provisions in insurance policies.

The remaining issue is whether Riley's duty to indemnify Harsco extends to the several hundred thousand dollars of legal expenses incurred by Harsco in defending against Krien's suit and also in litigating the current suit. It does. Paragraph 4.8 required Riley to "defend" Harsco against Krien's suit, implying that Riley would bear that cost. See *Barrons v. J. H. Findorff & Sons, Inc.*, 278 N.W.2d 827, 830, 835 (Wis. 1979); *Huset v. Milwaukee Dressed Beef Co.*, 174 N.W.2d 740, 745 (Wis. 1970); *Sauk County v. Employers Ins. of Wausau*, 623 N.W.2d 174, 178–79 (Wis. App. 2000); *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 152–53 (7th Cir. 1996). For if Harsco had to pay, the requirement that Riley defend it would have no meaning. Riley must therefore reimburse Harsco's attorneys' fees (which Riley doesn't contend were excessive or improvident). And finally Harsco is entitled to prejudgment interest at the rate of 5 percent per annum. *U.S. Fire Ins. Co. v. Good Humor Corp.*, 496 N.W.2d 730, 740–41 (Wis. App. 1993).

In summary, the district court should have granted summary judgment in favor of Harsco. The judgment in favor of Riley is therefore reversed and the case remanded with directions to enter judgment for Harsco.

REVERSED AND REMANDED.