Catherine D. NOONAN and Daniel A. Noonan,
Plaintiffs-Appellants,

v.

NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,
Doe A, Doe B, Doe C, Insurer X, Insurer Y, and
Insurer Z, Defendants-Respondents.†

Court of Appeals

*No. 03–1432. Oral argument April 22, 2004.—Decided
June 22, 2004.*

2004 WI App 154

(Also reported in 687 N.W.2d 254.)

---

† Petition to review denied 9-1-2004.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *George P. Kersten, E. Campion Kersten* and *Kenan J. Kersten* of *Kersten & McKinnon, S.C.*, Milwaukee; *Mark B. Pollack* and *Maria S. Lazar* of *Galanis, Pollack & Jacobs, S.C.*, Milwaukee; and *K. Scott Wagner* of *Hale & Wagner, S.C.*, Milwaukee. There was oral argument by *George P. Kersten*.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Eric J. Van Vugt, Daniel E. Conley* and *Cristina D. Hernandez-Malaby* of *Quarles*

& *Brady LLP*, Milwaukee. There was oral argument by *Eric J. Van Vugt.*

Before Cane, C.J, Peterson and Higginbotham, JJ.

¶ 1. PETERSON, J. Catherine and Daniel Noonan own annuity policies with Northwestern Mutual Life Insurance Company. They sued Northwestern, claiming breach of contract and breach of fiduciary duty. Their complaint alleges that beginning in 1985, Northwestern unilaterally changed the way it distributes its surplus profit to annuity policyholders. According to the Noonans, instead of equitably sharing its annual surplus profit as required by the annuity policies and by statute, Northwestern has paid them only interest from a short-term bond account.

¶ 2. The trial court dismissed the Noonans' complaint for failure to state a claim. We conclude the policies entitle the Noonans to receive dividends based on the annual surplus of the company. Because the complaint alleges Northwestern failed to pay dividends on that basis, we further conclude the Noonans have stated claims for breach of contract and breach of fiduciary duty. Accordingly, we reverse the judgment and order dismissing the complaint.

## BACKGROUND

¶ 3. For purposes of a motion to dismiss, the allegations of a complaint are taken as true. *See Town of Eagle v. Christensen*, 191 Wis. 2d 301, 311–12, 529 N.W.2d 245 (Ct. App. 1995). The Noonans' complaint states that they own deferred annuity contracts issued by Northwestern. They purchased the annuities in 1976. The annuities are "participating" and the contracts originally stated:

38

This policy shall share in the divisible surplus, if any, of the Company. This policy's share shall be determined annually and credited as a dividend. Payment of the first dividend is contingent upon payment of the premium or premiums for the second policy year and shall be credited proportionately as each premium is paid. Thereafter, each dividend shall be payable on the policy anniversary.

¶ 4. In 1983, some policyholders, including one of the Noonans, approved an amendment to their annuity contracts. The amendment provided that annual dividends would be computed based on net value after deducting policy loans:

This policy will share in the divisible surplus of the Company. This surplus is determined each year. The policy's share will be credited as a dividend on the policy anniversary. This dividend will reflect the mortality, expense and investment experience of the Company and will be affected by any policy indebtedness during the policy year.

¶ 5. Until 1985, dividends were paid based on Northwestern's overall financial performance measured by the return on a general account portfolio of investments. These included securities, real estate, business enterprises and other investments.

¶ 6. In 1985, Northwestern changed the way it distributed dividends to annuity policyholders. Northwestern created a segmented account invested in short-term bonds. Owners of annuities then received a share of interest earned on the short-term bonds only. The Noonans learned of the change in 2000 and commenced this action against Northwestern and its officers and directors.

¶ 7. As its first claim, the complaint alleges that Northwestern breached the annuity contracts by ex-

cluding the Noonans from participation in the divisible surplus of the company. The complaint states the annuities' growth and value were reduced as a result of Northwestern's change.

¶ 8. As its second claim, the complaint alleges that Northwestern, as well as its officers and directors, breached their fiduciary duty to the Noonans. This claim is based on Northwestern's failure to (1) include annuity policyholders in the divisible surplus after 1985 and (2) notify policyholders of the 1985 change.

¶ 9. Northwestern moved to dismiss the complaint, arguing the Noonans had failed to state a claim. The trial court granted the motion and dismissed the complaint.

## DISCUSSION

¶ 10. A motion to dismiss for failure to state a claim tests whether the complaint is legally sufficient to state a claim for which relief may be granted. *Doe v. Archdiocese of Milwaukee*, 211 Wis. 2d 312, 331, 565 N.W.2d 94 (1997). The legal sufficiency of the complaint is a question of law that this court reviews independently. *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 245, 593 N.W.2d 445 (1999). In examining the legal sufficiency of the complaint, we assume that the facts alleged are true. *Id.* We will affirm an order dismissing a complaint for failure to state a claim if it appears that no relief can be granted under any set of facts that the plaintiff could prove in support of the allegations. *Quesenberry v. Milwaukee County*, 106 Wis. 2d 685, 690, 317 N.W.2d 468 (1982).

## A. Breach of Contract

¶ 11. The Noonans first claim that Northwestern breached the annuity contracts. They contend the plain language of the contracts gives them a right to "share in the divisible surplus of the Company." They allege that the contracts provide that their "share shall be determined annually and credited as a dividend." For example, the Noonans point to the 1983 amendment which states the dividend shall reflect "the mortality, expense and investment experience of the Company . . . ." Thus, the Noonans state their dividends should reflect their fair share of Northwestern's profits and long-term growth. Furthermore, the Noonans emphasize that the dividends are to be based on "the" divisible surplus of the company, meaning there is only one divisible surplus. The Noonans claim they have been excluded from sharing in the annual divisible surplus because they only have received interest from a separate short-term bond account.

¶ 12. The Noonans contend this meaning of the annuity contracts is supported by Wis. Stat. § 632.62[1]— the statute governing these policies.[2] They start with § 632.62(1)(b), which states that, with exceptions not applicable here, mutual insurance companies may issue only "participating policies." Then, § 632.62(2) provides:

> Every participating policy shall by its terms give its holder full right to participate annually in the part of the surplus accumulations from the participating business of the insurer that are to be distributed.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] The parties agreed at oral argument that statutory law is part of the contracts.

The surplus accumulation to be distributed is determined according to § 632.62(4)(b):

> Every insurer doing a participating business shall annually ascertain the surplus over required reserves and other liabilities. After setting aside such contingency reserves as may be considered necessary and be lawful, such reasonable nondistributable surplus as is needed to permit orderly growth, making provision for the payment of reasonable dividends upon capital stock and such sums as are required by prior contracts to be held on account of deferred dividend policies, the remaining surplus shall be equitably apportioned and returned as a dividend to the participating policyholders or certificate holders entitled to share therein.

¶ 13. The Noonans assert they are participating policyholders. By the terms of the statute, they claim they are entitled to an equitable apportionment of the annual remaining surplus. This is also what they contend they are promised by their policies: "This policy will share in the divisible surplus of the Company" and the "share shall be determined annually and credited as a dividend." Yet they received their dividend from a short-term bond account only, rather than from an equitable apportionment made after the annual divisible surplus was determined.

¶ 14. Northwestern does not deny that the annuity policyholders have a right to share in the divisible surplus. However, it maintains that the returns on short-term bonds *are* a share of the divisible surplus. Northwestern contends that it is following the statutory mandate. Instead of apportioning after the divisible surplus is determined, it merely decides beforehand the amount to which annuity policyholders are entitled. Northwestern argues that making the apportionment

beforehand is no different than making it after the divisible surplus is determined.[3]

¶ 15. Northwestern claims the breach of contract claim is really about how it apportions its divisible surplus, not about the determination of the divisible surplus. It contends that its apportionment is protected by the business judgment rule. In *Einhorn v. Culea*, 2000 WI 65, ¶ 19, 235 Wis. 2d 646, 612 N.W.2d 78, the supreme court held that judicial review of internal corporate business decisions is unavailable for informed good faith decisions made in the honest belief that the actions taken were in the corporation's best interests. The Noonans respond that the business judgment rule is a defense, not something that can be considered on a motion to dismiss a complaint.

¶ 16. We conclude that whether the business judgment rule applies at this stage is irrelevant. In our view, the Noonans' breach of contract claim is not simply about apportionment of the divisible surplus. Rather, it is founded on Northwestern's decision to predetermine the source of the annuities' dividend—the short-term bond fund—irrespective of the overall divisible surplus.

¶ 17. The annuity contracts and the statute are unambiguous. Northwestern does not argue otherwise. The contracts state that annuity policyholders "will share in the divisible surplus of the Company" and the "share shall be determined annually and credited as a dividend." WISCONSIN STAT. § 632.62(4)(b) mandates how the divisible surplus is to be determined. Every year Northwestern must (1) ascertain the surplus over re-

---

[3] Northwestern made this argument regarding the timing of the apportionment during oral argument. The Noonans did not dispute the timing.

quired reserves and liabilities and (2) subtract necessary contingency reserves, funds for orderly growth, dividends for capital stock and sums required by prior contracts. *Id.* After the surplus is determined, then and only then must Northwestern decide how to equitably apportion the surplus. *Id.* Here, Northwestern made the allocation to annuity policyholders before it determined the surplus. This is contrary to the terms of the annuity contracts and the statute. Thus, the Noonans have alleged sufficient facts to state a claim that Northwestern breached the annuity contracts.

## B. Breach of Fiduciary Duty

¶ 18. The Noonans claim Northwestern breached its fiduciary duty by (1) preventing the annuity policyholders from sharing in the divisible surplus and (2) failing to disclose the 1985 change to the policyholders. The parties dispute whether Northwestern even owes the Noonans a fiduciary duty in the first place.

¶ 19. Northwestern contends that it does not owe policyholders a fiduciary duty because the relationship between it and the policyholders is that of debtor and creditor. *See In re Metro. Life Derivative Litig.*, 935 F. Supp. 286, 293 (S.D.N.Y. 1996) ("the relationship between a mutual insurer and a policyholder 'is not of a fiduciary nature' but is instead that of a debtor and creditor.") (citation omitted); *see also Fidelity & Cas. Co. v. Metropolitan Life Ins. Co.*, 248 N.Y.S.2d 559, 623 (N.Y.S. 1963) ("As an incident of membership in [a mutual insurance company], the policyholder acquires certain specified proprietary interests therein, but, apart from these, the relationship is not of a fiduciary nature . . . and the relationship between the company and its policyholder is essentially that of debtor and

creditor . . ."). Thus, Northwestern argues the contracts alone define the rights and responsibilities of the parties and any remedy must lie in contract. *See Andrews v. Equitable Life Assur. Soc.* 124 F.2d 788, 789 (7th Cir. 1941) ("Whatever rights a member of a mutual company has are delineated by the terms of the contract, and come from it alone."); *see also Fidelity & Casualty*, 248 N.Y.S.2d at 623 (the relationship between the company and the policyholder is "measured by the contractual terms of the policy.").

¶ 20. In addition, annuities do not usually involve a fiduciary relationship. For example, 44 C.J.S. *Annuities* § 34 (2003) (citation omitted), states that "[t]he relationship of an insurer and an annuitant is not a fiduciary one." Further, 1 APPLEMAN, *Insurance Law and Practice* § 81 (1981), states, "An annuity contract ordinarily creates a debtor-creditor relationship, and not a trust relationship. . . . A company, it has been held, does not stand in a fiduciary relationship to a legally competent annuitant."

¶ 21. However, there is also conflicting authority that would suggest a fiduciary duty does exist. For example, 44 C.J.S. *Insurance* § 114(c) (1993), states:

> The officers and directors of a mutual insurance company stand in a fiduciary relation to the company and its members, and occupy a position of trust. Officers and agents owe reasonable protection to the rights of the members, and they may render themselves liable to the company or its members for gross neglect of duty or for willful wrong in the management of the company and its business. (Citations omitted.)

Further, according to Couch:

> Although there is no formal trust relationship, there is a duty imposed upon the company to act in good faith and to observe the rights of the members. This duty is often figuratively described as a duty of trust. Thus, it is said that the funds of a benefit society are trust funds for the members which have been created by their contributions.

3 LEE R. RUSS AND THOMAS F. SEGALLA, COUCH ON INSURANCE § 39:37 (3d ed. 2000) (citation omitted).

■

¶ 22. Based on our review of the Noonans' complaint and the applicable law in Wisconsin, we conclude that Northwestern does owe annuity policyholders a fiduciary duty. Ordinarily, the relationship between the parties to an annuity contract might be defined solely by the contract, as Northwestern argues. *See Andrews*, 124 F.2d at 789. That no doubt is due to the nature of a normal annuity. Typically, an annuity is no more than a contract. A person pays a certain sum for the annuity. In return, the issuer of the annuity agrees to pay the annuitant periodic payments, usually for life.

¶ 23. The Noonans' annuities, however, involve more. In addition to the periodic payments of a typical annuity, the complaint alleges that the Noonans' policies provide that they will share in Northwestern's divisible surplus. Furthermore, as we noted earlier, WIS. STAT. § 632.62(4)(b) defines how Northwestern is to determine its annual surplus. The statute then requires that the surplus be "equitably apportioned and returned as a dividend to the participating policyholders . . . ." In other words, Northwestern occupies a position of trust not just to determine the surplus, but to equitably apportion the surplus among all participating policyholders.

¶ 24. "A fiduciary relationship arises from a formal commitment to act for the benefit of another (for example, a trustee) or from special circumstances from which the law will assume an obligation to act for another's benefit." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Boeck*, 127 Wis. 2d 127, 136, 377 N.W.2d 605 (1985). "Manifest in the existence of a fiduciary relationship is that there exists an inequality, dependence . . . knowledge of facts involved, or other conditions giving to one an advantage over the other." *Production Credit Ass'n v. Croft*, 143 Wis. 2d 746, 755–56, 423 N.W.2d 544 (Ct. App. 1988).

¶ 25. Here, the Noonans invested in annuities through Northwestern, and Northwestern has an obligation to act for the Noonans' and other annuity policyholders' benefit. The policyholders are dependent upon Northwestern's investment decisions and are thus in an inferior position to Northwestern. Consequently, Northwestern owes the policyholders a fiduciary duty.

¶ 26. The Noonans' complaint alleges Northwestern breached its fiduciary duty. They claim Northwestern changed the method for calculating dividends, paying them based on a short-term bond account rather than the overall divisible surplus. We interpret this to be a way of contending Northwestern was not "equitably allocating" the surplus. *See Lane v. Sharp Packaging Sys.*, 2001 WI App 250, ¶ 15, 248 Wis. 2d 380, 635 N.W.2d 896 (we liberally construe pleadings when deciding a motion to dismiss). This is sufficient to state a claim for breach of fiduciary duty.[4]

---

[4] The Noonans also claim Northwestern violated its fiduciary duty by failing to notify them of the change. Because we

¶ 27. The Noonans also contend Northwestern's individual officers and directors owe annuity policyholders a fiduciary duty. The circuit court concluded that because Northwestern owed no fiduciary duty, there can be no duty by the individual members of the board. Northwestern simply reiterates what the court concluded. Here, as we have concluded, the Noonans have pled sufficient facts that Northwestern owes them a fiduciary duty and that it breached that duty. We also note the authority cited earlier that officers and directors of a mutual insurance company owe a fiduciary duty. *See* 44 C.J.S. *Insurance* § 114(c). Therefore, we conclude the Noonans have stated a claim against the individual officers and directors as well.

## C. Other issues

¶ 28. Northwestern argues that even if we reverse the trial court on the breach of contract and breach of fiduciary duty claims, the complaint should be dismissed for three other reasons.

### 1. Primary Jurisdiction

¶ 29. Northwestern contends that the primary jurisdiction doctrine requires the Noonans' claims to be resolved by the Office of the Commissioner of Insurance. The primary jurisdiction doctrine states:

> If the issue presented to the court involves exclusively factual issues within the peculiar expertise of the commission, the obviously better course would be to

are satisfied the alleged change itself states a claim, we express no opinion whether lack of notice is a breach.

> decline jurisdiction and to refer the matter to the agency. On the other hand, if statutory interpretation or issues of law are significant, the court may properly choose in its discretion to entertain the proceedings.

*Wisconsin Collectors Ass'n, Inc. v. Thorp Fin. Corp.*, 32 Wis. 2d 36, 45, 145 N.W.2d 33 (1966). Northwestern argues this case involves "highly technical actuarial formulas by which dividends are determined and collected." We disagree. The manner in which dividends are to be determined is provided by WIS. STAT. § 632.62(4)(b). The Noonans claim Northwestern violated this statute. Thus, this case involves statutory and contract interpretation, which fall within the province of the court.

¶ 30. Furthermore, resolution of this argument would require us to look outside the pleadings. Our review of a motion to dismiss is limited to the allegations in the complaint. *See Lane*, 248 Wis. 2d 380, ¶ 15 (on a motion to dismiss we are concerned only with the legal sufficiency of the complaint).

2. Statute of Limitations

¶ 31. Northwestern argues the statute of limitations bars the contract claim. WISCONSIN STAT. § 893.43 states that the statute of limitations for a breach of contract action is six years. Northwestern claims that any breach occurred in 1985 when the change was made. Therefore, Northwestern argues the statute of limitations had run well before the Noonans filed this action.

¶ 32. The Noonans contend the claim is subject to the continuing violation rule. We agree. The continuing violation rule states, "if the promisor has a continuing duty to perform, generally a new claim accrues for each

separate breach. The injured party may assert a claim for damages from the date of the first breach within the period of limitation." *Jensen v. Janesville Sand & Gravel Co.*, 141 Wis. 2d 521, 527, 415 N.W.2d 559 (Ct. App. 1987) (quoting *Segall v. Hurwitz*, 114 Wis. 2d 471, 491, 339 N.W.2d 333 (Ct. App. 1983)). Thus, if Northwestern breached the contracts, a breach occurred every year it failed to follow WIS. STAT. § 632.62(4)(b) to determine the annuity policyholders' share of the divisible surplus. Because the statute of limitations is six years, the continuing violation rule allows an action for Northwestern's breach of the contracts over the six years prior to filing of this action.

3. Economic Loss

¶ 33. Northwestern contends the economic loss doctrine bars the breach of fiduciary duty claim. The economic loss doctrine states that when a party to a contract suffers only economic loss, the exclusive remedy lies in contract. *See Digicorp, Inc. v. Ameritech Co.*, 2003 WI 54, ¶ 34, 262 Wis. 2d 32, 662 N.W.2d 652.

¶ 34. However, the economic loss doctrine, when it applies, bars recovery in tort for damages resulting from a product not performing as intended, including damages to the product itself or economic losses caused by the defective product. *Selzer v. Brunsell Bros., Ltd.*, 2002 WI App 232, ¶ 33, 257 Wis. 2d 809, 652 N.W.2d 806. The Noonans do not allege a product failed to perform as intended. Nor does Northwestern develop an argument for why the doctrine should be expanded to apply here. *See, e.g., Van Lare v. Vogt, Inc.*, 2004 WI 110, ¶ 2, 274 Wis. 2d 631, 683 N.W. 2d 46 (the economic

loss doctrine bars a claim for strict responsibility misrepresentation in a commercial real estate contract). Thus, the economic loss doctrine does not bar the breach of fiduciary duty claim.

*By the Court.*—Judgment and order reversed.