2012 COA 136

**NEUROMONITORING ASSOCIATES,**
Plaintiff–Appellant,

v.

**CENTURA HEALTH CORPORATION,** Catholic Health Initiatives Colorado, and Portercare Adventist Health System, Defendants–Appellees.

No. 11CA1391.

Colorado Court of Appeals,
Div. V.

Aug. 16, 2012.

Robinson Waters & O'Dorisio, P.C., Steven L. Waters, Brian G. McConaty, Bradley G. Robinson, Kimberly A. Bruetsch, Denver, Colorado, for Plaintiff–Appellant.

Kutak Rock, LLP, Chad T. Nitta, Mark L. Sabey, Blair E. Kanis, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge LOEB.

¶ 1 In this action for breach of an exclusivity clause in a professional services contract, plaintiff, Neuromonitoring Associates, appeals the district court's summary judgment entered in favor of defendants, Centura Health Corporation, Catholic Health Initiatives Colorado, and Portercare Adventist

Health System. The district court concluded that plaintiff's claims were subject to a three-year statute of limitations, that equitable tolling of the limitations period was unwarranted based on the evidence presented, and that the entire action must be dismissed because plaintiff did not commence it within the applicable limitations period.

¶ 2 We agree with the district court's conclusions that plaintiff's claims were subject to a three-year limitations period and were not subject to equitable tolling. We also conclude that the district court properly dismissed plaintiff's claims insofar as they were based on alleged breaches by defendants that occurred more than three years before the action was commenced. However, we further conclude that to the extent plaintiff's claims were based on alleged breaches occurring within three years of the filing of the complaint, the district court erred in dismissing those claims. Consequently, we reverse that portion of the summary judgment and remand for further proceedings.

I. Background and Procedural History

¶ 3 On January 5, 2010, plaintiff commenced this action seeking to recover damages arising out of defendants' alleged breaches of an Intraoperative Nerve Monitoring Agreement (agreement). The agreement became effective on July 1, 2004, and was valid for a term of one year with automatic renewals for additional one-year terms, unless otherwise terminated with proper notice.[1] For example, either party could terminate the agreement without cause by giving thirty-days' written notice.

¶ 4 Plaintiff alleged that under the agreement, it was to be the exclusive provider of surgical nerve monitoring services to six designated hospitals. Plaintiff further alleged that defendants breached the agreement by entering into agreements with other nerve monitoring companies and allowing those companies to perform nerve monitoring services at the designated hospitals. Plaintiff asserted claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

¶ 5 Defendants moved for summary judgment, arguing that plaintiff's claims were barred by the three-year limitations period contained in section 13–80–101(1)(a), C.R.S. 2011. Defendants submitted supporting documents indicating that since 2005 plaintiff had been aware that other companies were providing neuromonitoring services at the designated hospitals in violation of the agreement's exclusivity provision.

¶ 6 Plaintiff filed a response arguing that its claims were subject to the six-year limitations period contained in section 13–80–103.5(1)(a), C.R.S.2011. Alternatively, plaintiff argued that, even if the three-year limitations period applied, the action was timely because defendants were equitably estopped from relying on the statute of limitations defense, and because defendants committed "repeated, successive breach[es] of a continuing protective covenant" such that plaintiff should be able to "seek damages for the three year period preceding the filing of the Complaint."

¶ 7 The district court concluded that the three-year limitations period applied to plaintiff's claims. However, citing an affidavit of plaintiff's president, the court concluded that, based on the existing record, "the parties are in dispute as to when [p]laintiff was aware or should have been aware that the contract had been breached." Consequently, the district court denied defendants' motion.

¶ 8 Following the completion of further discovery, defendants renewed their summary judgment motion based on expiration of the statute of limitations. Defendants attached additional evidentiary materials indicating that plaintiff had believed in 2005 that defendants were in breach of the agreement's exclusivity provision, and that plaintiff made a conscious strategic business decision

---

1. The parties actually entered into two written agreements during their business relationship. The first, which contained an exclusivity provision and is at issue here, is dated July 1, 2004, and was renewed automatically each year by its terms until defendants terminated the agreement, effective July 1, 2009. The parties then entered into a second agreement on September 1, 2009, which did not contain an exclusivity provision and was terminated by defendants in the spring of 2010. Plaintiff's action relates only to the first agreement.

to continue under the agreement rather than initiate legal action.

¶ 9 In ruling on defendants' renewed summary judgment motion, the district court first reaffirmed its prior ruling that plaintiff's claims were subject to a three-year limitations period. Then, based on the additional materials submitted, the court concluded there was no longer a disputed factual issue that plaintiff's claims accrued in April 2005, and that the action was barred because plaintiff did not file the complaint within three years of that date. The court also rejected plaintiff's arguments that the limitations period should be equitably tolled, and that at least some of plaintiff's claims were timely based on the continuing nature of defendants' breaches.

## II. Analysis

### A. Summary Judgment Standards

¶ 10 Summary judgment is proper where there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c). The burden of establishing an absence of a genuine issue of material fact falls on the moving party, but once this initial burden of production is met, the burden shifts to the opposing party to demonstrate a triable issue of fact. *City of Aurora v. ACJ P'ship*, 209 P.3d 1076, 1082 (Colo.2009). "This rule requires the opposing party to adequately demonstrate by relevant and specific facts that a real controversy exists." *Id.*

¶ 11 In determining whether summary judgment is appropriate, the nonmoving party is entitled to the benefit of all favorable inferences reasonably drawn from the undisputed facts, and all doubts must be resolved against the moving party. *See Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 146 (Colo.2007).

¶ 12 Summary judgment may be granted in favor of a defendant based on a determination that the plaintiff did not file the action within the applicable statute of limitations. *See United Fire Grp. v. Powers Electric, Inc.*, 240 P.3d 569, 570 (Colo.App.2010).

¶ 13 We review the decision to grant a motion for summary judgment de novo. *See*

*id.; see also Two Denver Highlands Ltd. Liab. Ltd. P'ship v. Stanley Structures, Inc.*, 12 P.3d 819, 821 (Colo.App.2000).

### B. Applicable Statute of Limitations

¶ 14 Plaintiff contends the district court erred in applying the three-year limitations period in section 13–80–101(1)(a), rather than the six-year limitations period in section 13–80–103.5(1)(a). We disagree.

¶ 15 Section 13–80–101(1)(a) provides for a three-year limitations period for "[a]ll contract actions ... except as otherwise provided in section 13–80–103.5." As pertinent here, section 13–80–103.5(1)(a) provides for a six-year limitations period for "[a]ll actions to recover a liquidated debt or an unliquidated, determinable amount of money."

¶ 16 An amount is liquidated or determinable for purposes of section 13–80–103.5(1)(a) if the amount due is ascertainable by reference to an agreement or by simple computation, even if reference must be made to facts external to the agreement. *See Rotenberg v. Richards*, 899 P.2d 365, 367–68 (Colo.App.1995); *see also Interbank Invs., L.L.C. v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1230 (Colo.App.2000). However,

> [a] sum is not liquidated or determinable merely because a fact finder, armed with information relevant to determining the amount owed, can arrive at a specific amount of damages. After all, such a determination is possible in every contract action in which the amount claimed is not speculative. Rather, a sum is liquidated or determinable within the meaning of section 13–80–103.5(1)(a) only where the agreement sets forth an amount owed or a formula for calculating an amount owed.

*Portercare Adventist Health Sys. v. Lego*, 312 P.3d 201 (Colo.App.2010) (cert. granted Mar. 14, 2011).

¶ 17 Here, plaintiff is not seeking damages for nonpayment for services it actually provided to defendants. Rather, it seeks to recover damages based on services it never received the opportunity to provide which, according to the complaint, caused plaintiff "loss of business revenue, loss of business,

short and long term financial and professional harm" and "future financial injuries, damages and losses."

¶ 18 The agreement does not contain a liquidated damages provision addressing these types of claimed losses, nor does it specify how they should be calculated. Indeed, as reflected in a report prepared by plaintiff's own damages expert, determining plaintiff's alleged lost profits requires consideration of various matters about which the agreement is completely silent. These include the determination of a "reasonable collectability rate" for private pay and Medicaid/Medicare cases, and a calculation of plaintiff's own "cost of performance" or "cost of completion" savings based on not having to perform, which, in turn, includes various "material normalization adjustments."

¶ 19 Plaintiff notes that for Medicare or Medicaid cases, the agreement specifies a $100 per hour rate based on actual time spent monitoring the patient. However, plaintiff does not explain why this gross hourly amount would be exempt from the same net lost profit analysis described by its damages expert.

¶ 20 Because the amounts plaintiff seeks are not ascertainable by reference to the agreement or by simple computation, they are not "liquidated or determinable" within the meaning of section 13–80–103.5(1)(a). Consequently, the district court correctly determined that the six-year limitations period under section 13–80–103.5(1)(a) did not apply and that plaintiff's action was, instead, covered by the three-year breach of contract limitations period contained in section 13–80–101(1)(a). See Portercare, 312 P.3d at ——; see also Union Pac. R.R. Co. v. Certain Underwriters at Lloyd's, 37 P.3d 524, 525–26 (Colo.App.2001).

## C.   Equitable Tolling

¶ 21 Plaintiff next contends that the district court erred in concluding that defendants' conduct did not warrant equitable tolling of the limitations period. We perceive no error.

■ ¶ 22 Equitable tolling of a statute of limitations is limited to circumstances in which either a defendant wrongfully impedes a plaintiff's ability to bring the claim, or truly extraordinary circumstances prevent a plaintiff from filing the claim despite diligent efforts. See Brodeur, 169 P.3d at 149; Dean Witter Reynolds, Inc. v. Hartman, 911 P.2d 1094, 1096–97 (Colo.1996); Vessels v. Hickerson, 2012 COA 28, ¶ 56, 327 P.3d 277; Olson v. State Farm Mut. Auto. Ins. Co., 174 P.3d 849, 858 (Colo.App.2007); see also Cork v. Sentry Ins., 194 P.3d 422, 427 (Colo.App. 2008). Once a statute of limitations defense has been raised, the plaintiff bears the burden of establishing the factual foundation for equitable tolling. See Garrett v. Arrowhead Improvement Ass'n, 826 P.2d 850, 855 (Colo. 1992).

■ ¶ 23 Here, in support of its equitable tolling argument, plaintiff submitted evidence that (1) defendants had provided it with assurance they were "investigating" the alleged breach and would "get back to" plaintiff, and (2) plaintiff believed filing suit would cause defendants to terminate the agreement and effectively put plaintiff out of business.

¶ 24 Viewing these factual assertions in a light most favorable to plaintiff, we agree with the district court's conclusion that they were insufficient as a matter of law to warrant equitable tolling of the statute of limitations. Specifically, plaintiff failed to present evidence indicating that defendants wrongfully impeded its ability to bring its claims, or that it was ignorant of relevant facts that prejudiced its decision whether to file the action. Moreover, plaintiff's fear that filing suit might cause defendants to exercise their contractually agreed-upon right to terminate the agreement does not amount to "extraordinary circumstances" that prevented it from filing the action. Consequently, the district court properly concluded that equitable tolling of the limitations period was unwarranted. See Brodeur, 169 P.3d at 149; Dean Witter, 911 P.2d at 1098–99; Olson, 174 P.3d at 859; see also Gognat v. Ellsworth, 224 P.3d 1039, 1049 (Colo.App.2009), aff'd, 259 P.3d 497 (Colo.2011).

## D.   Accrual of Plaintiff's Cause of Action

### 1.   Initial Accrual Date

■ ¶ 25 Plaintiff contends there were genuine issues of material fact concerning

when its cause of action first accrued. Again, we disagree.

¶ 26 A cause of action for breach of any express or implied contract "shall be considered to accrue on the date the breach is discovered or should have been discovered by the exercise of reasonable diligence." § 13–80–108(6), C.R.S.2011; *accord Jackson v. Am. Family Mut. Ins. Co.*, 258 P.3d 328, 332 (Colo.App.2011).

¶ 27 In their renewed summary judgment motion, defendants attached discovery materials indicating that beginning in April 2005 and extending into 2006, plaintiff became aware that other companies were providing nerve monitoring services to defendants at hospitals designated in the agreement, and that plaintiff considered this to be a breach of the agreement's exclusivity provision. Defendants also attached excerpts from the deposition of plaintiff's CEO and co-founder indicating that in 2006, she and plaintiff's other co-founder decided on a "strategy" concerning defendants' breach, which was "to continue to uphold [the agreement] and to continue to work and do as many cases as [plaintiff] could at Centura." She indicated plaintiff was concerned that filing suit would result in losing all of defendants' business.

¶ 28 Through these materials, defendants met their initial burden of establishing an absence of a genuine issue of material fact that plaintiff's cause of action accrued in April 2005. Accordingly, the burden shifted to plaintiff to demonstrate a triable issue of fact. *See ACJ P'ship*, 209 P.3d at 1082.

¶ 29 In response to defendants' renewed summary judgment motion, plaintiff acknowledged notifying defendants in 2005 of the first alleged breach of which it became aware. However, plaintiff asserted that its cause of action did not begin accruing at that time because defendants repeatedly indicated "they were investigating the issue and would get back to [plaintiff]" and at no point confirmed they had breached the agreement. Thus, plaintiff asserted it "had no knowledge that [defendants] could not or would not maintain the exclusive provision of the contract." According to plaintiff, it was only when "discovery was exchanged in this case that [plaintiff] received confirmation from [defendants] that they had repeatedly breached the exclusivity provision of the [a]greement."

¶ 30 Even assuming the truth of plaintiff's assertion that defendants never confirmed they breached the agreement, such a confirmation was not necessary for the cause of action to accrue. Rather, all that was required were sufficient facts such that plaintiff discovered, or through reasonable diligence should have discovered, the breach. *See* § 13–80–108(6); *Jackson*, 258 P.3d at 332.

¶ 31 The undisputed evidentiary materials establish that (1) plaintiff was aware beginning in April 2005 that other entities were providing nerve monitoring services to defendants at the designated hospitals; (2) plaintiff, during 2005 and 2006, considered defendants to be in breach of the agreement's exclusivity provision by authorizing or allowing the other entities to provide these services; and (3) plaintiff made a strategic business decision in 2006 not to seek to enforce the exclusivity provision.

¶ 32 Based on these materials, the district court properly concluded there was no genuine factual controversy that the three-year limitations period on plaintiff's cause of action began accruing in April 2005.

## 2. Multiple, Successive Breaches

¶ 33 Plaintiff alternatively contends that the "continuing nature" of defendants' conduct resulted in "repeated, successive breaches" and that its breach of contract cause of action must, therefore, be deemed timely at least as to any breaches occurring within the three years preceding the January 5, 2010, filing of the complaint. We agree with this contention.

¶ 34 In *Barker v. Jeremiasen*, 676 P.2d 1259 (Colo.App.1984), a division of this court concluded that protective covenants governing three lots "imposed a continuing obligation upon the defendants," whose conduct caused "repeated and successive breaches" of the covenants up to the time of trial. *Id.* at 1261. Although the defendants' breaching conduct began more than three years before the plaintiffs commenced the action, the *Barker* division held that the entire action

was not barred by the three-year breach of contract limitations period and, instead, concluded the action was timely as to breaches occurring within the three-year period preceding the filing of the action. *Id.* at 1261–62.

¶ 35 We conclude that the rationale of *Barker* applies to plaintiff's claims in this case. Although defendants contend *Barker* is distinguishable because it involved protective covenants concerning real property, the concept of continuing contractual obligations, capable of being breached on multiple successive occasions, is not limited to real property covenants. Indeed, to the contrary, this concept has been recognized in the context of a variety of different contracts. *See, e.g., Paul Holt Drilling, Inc. v. Liberty Mut. Ins. Co.,* 664 F.2d 252, 255 (10th Cir.1981) (contractual obligation of insurer to defend insured); *Spin Doctor Golf, Inc. v. Paymentech, L.P.,* 296 S.W.3d 354, 363 (Tex.App.2009) (contract for payments to be calculated and paid on periodic basis); *Noonan v. Nw. Mut. Life Ins. Co.,* 276 Wis.2d 33, 687 N.W.2d 254, 262 (Wis.Ct.App.2004) (contract providing for right to share in divisible surplus to be determined annually and credited as dividend); *Segall v. Hurwitz,* 114 Wis.2d 471, 339 N.W.2d 333, 343 (Wis.Ct.App.1983) (covenant not to compete and agreement not to use business name); *see also* 10 Arthur L. Corbin, *Corbin on Contracts* § 956 (interim ed.2007) (citing examples of continuing contracts as including those to "maintain and keep in repair roads, fences and buildings, to give a railway pass for life, to furnish heat, [and] to refrain from competition in business" and asserting that "there is no essential difference between a 'continuing' contract and an 'installment' contract" because "[b]oth require a series of performances over a period of time" and "both are capable of a series of breaches for which a series of actions can be maintained").

¶ 36 In circumstances where a contract contains this type of "continuing duty to perform, generally a new claim accrues for each separate breach" and the plaintiff "may assert a claim for damages from the date of the first breach within the period of limitation." *Noonan,* 687 N.W.2d at 262; *see C–B Realty & Trading Corp. v. Chicago & N.W. Ry. Co.,* 289 Ill.App.3d 892, 225 Ill.Dec. 59, 682 N.E.2d 1136, 1140 (1997) (because each breach of a continuous duty has its own accrual date, a plaintiff may sue on any breach which occurred within the limitation period, even if earlier breaches occurred outside the limitation period) (citing *Hi–Lite Prods. Co. v. Am. Home Prods. Corp.,* 11 F.3d 1402, 1409 (7th Cir.1993)); *see also Paul Holt Drilling,* 664 F.2d at 256 (insurer's continued refusal to defend insureds constituted series of breaches and limitations period ran with each breach); *RDO Foods Co. v. United Brands Int'l, Inc.,* 194 F.Supp.2d 962, 971 (D.N.D.2002) (separate wrong occurred each time defendant failed to pay management fee as determined by formula in management agreement, and each time plaintiff was not paid according to the terms of the management agreement, new cause of action for breach of contract arose, each with its own statute of limitations period); *Christmas v. Virgin Islands Water & Power Auth.,* 527 F.Supp. 843, 848 (D.Vi.1981) (breach of continuing covenant gave rise to cause of action each day breach continued and statute of limitations began to run anew as each breach occurred); *Andersen v. A.M.W., Inc.,* 266 Neb. 238, 665 N.W.2d 1, 6 (2003) (concluding that each time defendant failed to pay plaintiff commission as required under ongoing contractual obligation, separate breach of the agreement occurred, and distinguishing circumstances in which wrongful actions or damages flowed from single breach); *Spin Doctor Golf,* 296 S.W.3d at 363 (parties' agreement constituted continuing contract and claims based on breaches within four years before date suit was filed were not barred by statute of limitations).

¶ 37 Two Colorado cases on which defendants rely, *Polk v. Hergert Land & Cattle Co.,* 5 P.3d 402 (Colo.App.2000), and *Harmon v. Fred S. James & Co.,* 899 P.2d 258 (Colo. App.1994), are inapposite. First, neither case involved a breach of contract claim or addressed when a breach of contract claim accrues. Additionally, both cases address the "continuing violation doctrine" under which a plaintiff may, in certain instances, be allowed to sue for a time-barred act by linking it with action that occurred within the

applicable limitations period. *See Harmon,* 899 P.2d at 261 (continuing violation doctrine allows a plaintiff to obtain relief for time-barred action by linking it to actions within the limitation period); *see also Polk,* 5 P.3d at 405. This doctrine is distinct, however, from what plaintiff seeks here in its alternative argument, which is merely to be allowed to sue for alleged breaches occurring within the applicable three-year limitations period, not for breaches occurring before that time.

¶ 38 In rejecting plaintiff's argument that at least a portion of its cause of action is timely based on the concept of distinct separate breaches, the district court relied, in part, on the fact that plaintiff initially decided to keep operating under the agreement rather than sue for breach. However, given the summary judgment posture of this case, we cannot conclude as a matter of law that plaintiff waived its right to bring suit, or that it is estopped from seeking recovery, as to the alleged breaches by defendants occurring within three years of when the action was filed.

¶ 39 We conclude defendants' agreement in the 2004 contract (as renewed in subsequent years) that plaintiff would be the exclusive provider of nerve monitoring services at the designated hospitals was a continuing contractual obligation. In its complaint, plaintiff alleged that defendants committed "multiple breaches" of the agreement by allowing "up to 15 different companies to provide nerve monitoring services" at the designated hospitals.

¶ 40 Under these circumstances, each time defendants allowed another entity to perform services at one of the designated hospitals, a new alleged contract breach occurred. *See Barker,* 676 P.2d at 1262. And insofar as plaintiff seeks recovery based on alleged breaches under the 2004 agreement (as renewed each year until July 1, 2009) occurring in the three-year period before January 5, 2010, when it commenced this action, plaintiff's action was timely and the district court erred in concluding otherwise. *See id.* Consequently, the case must be remanded for reinstatement of those claims. Conversely, however, to the extent plaintiff seeks to recover for alleged breaches occurring more than three years before January 5, 2010, the district court properly dismissed those claims as being time barred. *Id.*

### E. Attorney Fees

¶ 41 Based on a prevailing party fee-shifting provision in the agreement, defendants request "an award of all attorney[ ] fees and costs incurred in association with the underlying district court proceedings as well as this appeal." In light of our partial reversal of the district court's summary judgment and our remand for further proceedings, we deny defendants' request for attorney fees and costs incurred in defending this appeal. Insofar as defendants seek attorney fees and costs incurred in the district court, we decline to address that request, which is already the subject of a pending motion in the district court and has yet to be fully resolved.

¶ 42 The judgment is affirmed insofar as it dismissed plaintiff's claims based on alleged breaches of the first agreement occurring more than three years before January 5, 2010. The judgment is reversed insofar as it dismissed plaintiff's claims based on alleged breaches of the first agreement occurring within the three-year period before January 5, 2010, and the case is remanded for reinstatement of and further proceedings on those claims.

Judge HAWTHORNE and Judge MILLER concur.