24CA0504 Omer v Nsirat 05-08-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0504
Arapahoe County District Court No. 22CV30398
Honorable Ben L. Leutwyler III, Judge

---

Alia Omer and Anwar Elhoweris a/k/a Anwar Omer,

Plaintiffs-Appellants,

v.

A. Mohammed Nsirat,

Defendant-Appellee.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE JOHNSON
Lipinsky and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 8, 2025

---

Muhaisen & Muhaisen, LLC, Wadi Muhaisen, Scott C. Hammersley, Denver, Colorado, for Plaintiffs-Appellants

Jan L. Hammerman, Englewood, Colorado, for Defendant-Appellee

¶ 1     In this dispute over the purchase and sale of a day-care center, plaintiffs, Alia Omer and Anwar Elhoweris, a/k/a Anwar Omer (collectively the Omers),[1] appeal the district court's judgment on the pleadings entered in favor of defendant, A. Mohammed Nsirat, a/k/a Mohammed A. Nsirat (Nsirat).

¶ 2     The Omers contend that the district court erred by (1) dismissing their claim for declaratory relief because an ongoing controversy existed so that their contract-based claims (claims two through six of the second amended complaint) are not barred by the applicable statute of limitations; (2) dismissing their tort and fraud claims (claims nine through eleven of the second amended complaint) because those claims arise from conduct occurring after March 2020, and thus fall within the applicable statute of limitations; and (3) failing to apply the doctrines of equitable tolling or continuous breach, even if the statutes of limitation have run. We disagree with all their contentions and, thus, affirm the judgment.

---

[1] We later refer to Alia Omer by her first name for clarity because the Omers share the same last name.  We intend no disrespect by doing so.

## I.    Background

¶ 3    The Omers ostensibly entered into an agreement with Nsirat to purchase all the assets of a business known as Children Chalet, a/k/a Children's Chalet, a licensed day-care facility.  Because they allege that Nsirat kept the assets despite their purchase of the business, the Omers filed this lawsuit on March 4, 2022.

¶ 4    As alleged in their second amended complaint, the Omers purchased the assets of Children's Chalet according to a bill of sale dated January 1, 2009.  The bill of sale is the only document that exists related to this business transaction.  It says that the Omers paid $290,000 of the $300,000 purchase price for the assets.  The bill of sale references an "Asset Purchase Agreement" and exhibits A and B, which purportedly list office fixtures, equipment, and leasehold improvements, but the Omers did not provide the court with copies of these documents.

¶ 5    The Omers alleged that they had access to the checking and savings accounts for Children's Chalet since the date the bill of sale was signed, and that they used the revenue of the business to pay its expenses, salaries, and taxes.  But they alleged that Nsirat retained and controlled the business's revenue and assets after

2

January 2009, he pledged the business's assets as collateral for various business loans that he obtained for his personal benefit, and he wrongfully suspended the Omers' access to the business's accounts in March 2020.

¶ 6     In all, the Omers asserted eleven claims for relief against Nsirat: declaratory relief, breach of contract, specific performance, breach of the covenant of good faith and fair dealing, promissory estoppel, breach of fiduciary duty, fraud, unjust enrichment, intentional interference with contractual obligations, fraudulent concealment, and civil theft.

¶ 7     In Nsirat's answer to the second amended complaint, he denied that the Omers were entitled to any relief because he remained the owner of Children's Chalet.  He asserted that the Omers failed to make the required remaining payment, so the sale was never completed.  He admitted that the Omers, as senior employees of the day-care center, had access to the corporate bank account to pay certain business expenses, but he denied that they had any authority to use the profits of Children's Chalet.

¶ 8     Nsirat also asserted that, because the purchase was never completed, he continued to be the sole owner of Children's Chalet,

3

made all required tax payments, was the licensee with respect to the state regulated day-care center, and generally directed the operations of the business. He asserted that, while the Omers served as senior employees of the business, and Alia served as manager of the business and received a salary and bonuses, the Omers never were the business's owners.

¶ 9 Nsirat sought judgment on the pleadings, arguing that the applicable statute of limitations had expired on all the Omers' claims. After full briefing, the court held a hearing in February 2024. At that hearing, the court orally ruled in favor of Nsirat and later entered an order saying that the transcript of the hearing constituted the court's written findings, order, and judgment.

## II. Analysis

¶ 10 We conclude, as did the district court, that the Omers' eleven claims for relief arise from the same central controversy — whether the Omers are the rightful owners of Children's Chalet. And we conclude that the district court did not err by granting judgment on the pleadings in favor of Nsirat on all claims. We address, and reject, each of the Omers' appellate contentions in turn.

## A. Standard of Review

¶ 11 We review de novo a district court's decision to grant a motion for judgment on the pleadings. *Fischer v. City of Colorado Springs*, 260 P.3d 331, 334 (Colo. App. 2010).

¶ 12 In evaluating a C.R.C.P. 12(c) motion for judgment on the pleadings, the district court must construe the allegations of the pleadings strictly against the movant, consider the factual allegations in the complaint as true, and grant the motion only if the matter can be determined on the pleadings and any facts of which the court may take judicial notice. *Hannon L. Firm, LLC v. Melat, Pressman & Higbie, LLP*, 293 P.3d 55, 58 (Colo. App. 2011); *see also Fischer*, 260 P.3d at 334. Entry of judgment on the pleadings is proper only if the material facts are undisputed and the movant is entitled to judgment as a matter of law. *Hannon L. Firm*, 293 P.3d at 58.

¶ 13 The motion should not be granted unless the pleadings themselves show that the matter can be determined on the pleadings. *Id.*; *see also Platt v. Aspenwood Condo. Ass'n*, 214 P.3d 1060, 1066 (Colo. App. 2009). If a judgment on the pleadings is entered, implicit in the district court's disposition is that "the

controlling law and undisputed facts permitted resolution of the entire matter without further discovery or introduction of evidence." *Fischer*, 260 P.3d at 334.

¶ 14     To the extent our analysis requires statutory interpretation, we do so de novo. *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo. 2010). We must adopt a construction that "best effectuates the intent of the General Assembly and the purposes of the legislative scheme." *State v. Nieto*, 993 P.2d 493, 501 (Colo. 2000). When construing a statute, we look at the plain language of the statute and give words and phrases their ordinary meanings. *Fischbach v. Holzberlein*, 215 P.3d 407, 409 (Colo. App. 2009). If the language is unambiguous, we do not resort to interpretive rules of statutory construction. *Seaman v. Colo. Manufactured Hous. Licensing Bd.*, 832 P.2d 1041, 1042 (Colo. App. 1991).

### B.     Declaratory Judgment and Substantive Claims

¶ 15     The district court found that the Omers' claim for declaratory relief involved a dispute to "determine the parties' rights under a contract, and therefore, it's a claim relating to contract." It applied the three-year statute of limitations period for breach of contract actions in section 13-80-101(1)(a), C.R.S. 2024, and concluded that

6

the Omers' contract-related claims were time barred.  But the Omers contend that the court's ruling on the pleadings was inappropriate to resolve its declaratory judgment claim because there was an ongoing controversy regarding Nsirat's failure to transfer the Children's Chalet assets to them, as required by the bill of sale.  For five reasons, we disagree.

¶ 16    First, the Omers seek a declaration of their rights involving a contractual dispute, so the limitations period for contract claims applies to the Omers' request for declaratory relief and to claims two through six of the second amended complaint.  Under C.R.C.P. 57 and Colorado's Uniform Declaratory Judgments Law, sections 13-51-105 to -110, C.R.S. 2024, a district "court may exercise its discretion to 'declare rights, status, and other legal relations,' so long as the declaratory judgment would 'terminate the uncertainty or controversy.'"  *Zab, Inc. v. Berenergy Corp.*, 136 P.3d 252, 255 (Colo. 2006) (first quoting § 13-51-105; and then quoting § 13-51-110).

¶ 17    We acknowledge that a party may seek a declaratory judgment to resolve a dispute regarding the interpretation of a contract or the legality of certain actions.  *See id.* at 253 (holding that a party may

7

seek a declaratory judgment to declare the existence of an oral contract when relief terminates the controversy or removes uncertainty); *Saxe v. Bd. of Trs. of Metro. State Coll. of Denver*, 179 P.3d 67, 79 (Colo. App. 2007) ("A court may consider a declaratory judgment action either before or after the contract has been breached" to eliminate uncertainty.).

¶ 18     A declaratory judgment, however, is not intended to replace substantive causes of action.  In *Harrison v. Pinnacol Assurance*, 107 P.3d 969, 972 (Colo. App. 2004), a division of this court determined that, when no substantive cause of action is asserted with the request for declaratory relief, the catch-all statute of limitations period of two years applies to the declaratory judgment claim.  *See also* § 13-80-102(1)(i), C.R.S. 2024 (all civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, must be commenced within two years after the cause of action accrues, and not thereafter for "[a]ll other actions of every kind for which no other period of limitation is provided").  And in actions where substantive claims are asserted alongside a claim for declaratory relief, the corresponding substantive claims' limitation periods control.  *Molleck v. City of*

*Golden*, 884 P.2d 725, 727 (Colo. 1994) (applying the limitations period for election contests in effect at the time); *Com. Union Ins. Co. v. Porter Hayden Co.*, 698 A.2d 1167, 1192-93 (Md. Ct. Spec. App. 1997) (the statute of limitations for declaratory judgment actions should coincide with that of the underlying coercive action). Thus, the Omers cannot assert a declaratory judgment action to get around or avoid the applicable statutory limitation periods related to their substantive causes of action.

¶ 19    Second, because the Omers seek a declaration of their rights under a contract, the limitations period of three years in section 13-80-101(1)(a) controls. Section 13-80-101(1)(a)'s plain language is unambiguous, stating that the three-year limitations period applies to all contract disputes, "*regardless of the theory upon which suit is brought.*" (Emphasis added.) *See also Rotenberg v. Richards*, 899 P.2d 365, 368 (Colo. App. 1995). By attempting to circumvent that limitations period through the guise of a declaratory action, the Omers ignore that resolving the ongoing dispute for declaratory relief purposes requires the court to determine the rightful owner of the business pursuant to the bill of sale.

¶ 20    Third, we reject the Omers' contention that, because claims nine through eleven of the second amended complaint involve Nsirat's actions after March 2020, they are not time barred. Claim nine (intentional interference with contractual relations) is subject to the two-year limitations period for tort claims in section 13-80-102(1)(a), or the three-year period for contracts in section 13-80-101(1)(a). The court applied the three-year period.[2] Claims ten and eleven (fraudulent concealment and civil theft, respectively) are subject to the three-year period for fraud in section 13-80-101(1)(c).

¶ 21    Again, the main dispute between the Omers and Nsirat involves ownership of Children's Chalet. If Nsirat restricted the Omers' access to the corporate bank accounts in March 2020, his action would only be impermissible if the Omers fully complied with the terms reflected in the bill of sale; otherwise, Nsirat — as the owner of the business — could add or remove signatories to the accounts as he deemed appropriate. Because Nsirat's actions in

_____

[2] We need not decide whether the claim of interference with contractual relations is subject to section 13-80-101(1)(a), C.R.S. 2024, or section 13-80-102(1)(a), C.R.S. 2024 because, in either scenario, our conclusion remains the same: the claim is time barred.

10

March 2020 hinge on the rights of the parties under a contract, we agree with the district court that claims nine through eleven are also time barred.

¶ 22    Fourth, the district court properly determined the time period within which the Omers should have discovered the alleged breach. Although the district court's order did not specifically address when the Omers should have discovered their fraud or tort claims, the contract analysis in this case does not differ from the analysis for their fraud and tort claims.

¶ 23    The interpretation of when a claim accrues under a statute of limitations is an issue of law that we review de novo. *Rider v. State Farm Mut. Auto. Ins. Co.*, 205 P.3d 519, 521 (Colo. App. 2009). But whether the statute of limitations bars a particular claim because a court finds certain circumstances exist is generally a question of fact. *Sulca v. Allstate Ins. Co.*, 77 P.3d 897, 899 (Colo. App. 2003).

¶ 24    For contract and fraud claims, a cause of action accrues on the date the breach or fraud "is discovered" or "should have been discovered by the exercise of reasonable diligence." § 13-80-108(3), C.R.S. 2024 (fraud); § 13-80-108(6) (contract). The cause of action is discovered when the party obtains knowledge of the facts

11

essential to the claim, not knowledge of the legal theory supporting it. *Int'l Network, Inc. v. Woodard*, 2017 COA 44, ¶ 10 (citing *Murry v. GuideOne Specialty Mut. Ins. Co.*, 194 P.3d 489, 492 (Colo. App. 2008)). Such knowledge includes information that would lead a reasonable person to inquire further. *Id.*

¶ 25 Tort claims generally do not begin to accrue until there is "at least some damage" resulting from the wrongdoer's action. *Duell v. United Bank of Pueblo, N.A.*, 892 P.2d 336, 340 (Colo. App. 1994). But the statute of limitations period begins to run once some injury has occurred, "*notwithstanding that further injury continues to occur.*" *Id.* (emphasis added).

¶ 26 The district court determined that the Omers' claims began to accrue on January 1, 2009, or some reasonable period of time thereafter. The court determined that Nsirat's alleged breaches were easily discoverable within "weeks or mere months after the closing," and it could not find any allegation in the pleadings to support the Omers' argument that discovery would have been "years subsequent to the sale of the business."

¶ 27 But the Omers contend there are disputed facts as to when they should have discovered Nsirat's breaches of the bill of sale. We

disagree. The Omers continued to work at Children's Chalet with Nsirat and could have easily discovered whether Nsirat failed to transfer business assets to them or refused to cease his oversight of day-care operations once the Omers became the owners. As part of their opposition to Nsirat's motion for judgment on the pleadings, they could have asserted additional facts or produced documentary evidence to support why there were disputed facts with respect to when they should have discovered the alleged breaches, such as producing documents that established the sale of the business had been completed; showing that Nsirat concealed information from them preventing them from verifying the asset transfer had not taken place; demonstrating their belief that they owned the business because Nsirat stopped working there and no longer had access to the business's bank accounts; or evidencing that state licensure of the business had been transferred to their own names, contrary to Nsirat's assertions that state licensure remained in his name. But the Omers proffered no such evidence.

¶ 28    Likewise, the Omers could have discovered any fraud or tort within a reasonable period of time after the breach of contract when Nsirat denied that the sale had been completed, continued to

operate the business, or declined to transfer the assets to the Omers. In short, we agree with the district court that the Omers did not allege facts to support that, following January 1, 2009, Nsirat obscured his role in the business so that it would not have been evident to the Omers that he continued to own and control the business.

¶ 29 Fifth and finally, the Omers' reliance on *Woodard* is misplaced. There, a jury rejected the seller's statute of limitations defense in which the defendant seller argued that the plaintiff broker, who did not file the lawsuit until 2011, could have discovered the breach of contract in 2006. *Woodard*, ¶¶ 12-15. The broker testified at trial that the seller had intentionally concealed his actions from the broker. *Id.* at ¶ 14. Because of the seller's acts of concealment, the division affirmed that the broker could not have discovered the seller's breaches earlier through the exercise of reasonable diligence. *Id.* at ¶¶ 16-17.

¶ 30 Unlike *Woodard*, and as discussed above, the Omers put forth no facts that alleged they were prevented from discovering or could not have discovered Nsirat's alleged breach of the bill of sale, fraud, or tortious conduct well before March 2022 when they filed their

14

lawsuit. Therefore, we conclude the district court did not err by finding that the Omers' claims were all time barred.[3]

## C. Equitable Tolling

¶ 31    The Omers argue that, even if the two- or three-year statutes of limitation apply to their claims, they should be tolled due to Nsirat's alleged concealment and deceit. Specifically, they contend that Nsirat (1) restricted their access to the business's financial accounts; (2) used the business's assets to secure several business loans for his personal use; and (3) retained control over the business's revenue and assets for his personal use and unrelated business ventures, despite their purchase of the business.

¶ 32    Colorado recognizes the doctrine of equitable tolling, which courts have applied in limited circumstances, such as when a defendant actively prevents a plaintiff from discovering the cause of action. *See Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 149-50 (Colo. 2007); *Olson v. State Farm Mut. Auto. Ins. Co.*, 174

---

[3] We deem abandoned on appeal any claims of error involving the court's judgment on the pleadings concerning claim seven (fraud) and claim eight (unjust enrichment), as the Omers do not raise any arguments relating to these claims in their briefs. *See Buckhannon v. U.S. W. Commc'ns, Inc.*, 928 P.2d 1331, 1334 (Colo. App. 1996).

P.3d 849, 858 (Colo. App. 2007).  Such conduct may include acts of concealment.  *See First Interstate Bank of Fort Collins v. Piper Aircraft Corp.*, 744 P.2d 1197, 1202 (Colo. 1987) (holding that the defendant's fraudulent concealment equitably tolled the statute of limitations).  Equitable tolling may also be applied where "extraordinary circumstances make it impossible for the plaintiff to file his or her claims within the statutory period." *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1097 (Colo. 1996).

¶ 33    As discussed above, the Omers fail to allege any facts that would support a finding that Nsirat actively concealed any breaches, fraud, or tortious conduct, or misled them in a way that prevented them from discovering that the assets of Children's Chalet had not been transferred to them.  The Omers also do not allege any facts as to how Nsirat prevented them from filing their lawsuit before March 2022.  For example, the Omers allege that Nsirat removed them as signatories from the bank accounts in March 2020, but this fact does not support a finding that Nsirat engaged in an act of concealment.  And the fact that Nsirat remained on the corporate accounts instead suggests that he openly held himself out as the owner of Children's Chalet.  In other

16

words, if the parties had finalized the sale, the Omers would have had notice well before March 2022 that Nsirat failed to uphold his end of the bargain and therefore could have filed suit before the applicable limitations periods ran.

¶ 34 Therefore, we discern no error in the district court declining to apply the doctrine of equitable tolling.

### D. Continuing Breaches

¶ 35 Finally, the Omers assert that the statutes of limitation should not bar their claims because Nsirat's actions constituted continuing breaches of the agreement. Specifically, the Omers maintain that the continuing breaches stem from Nsirat's ongoing obligation to the Omers to undertake actions to complete the transfer of the assets of Children's Chalet.

¶ 36 The district court pointed out a trespass claim of someone's property as an example of a continuing offense. It said that "[a] claim for trespass arises when the trespass occurs, or when the plaintiff reasonably discovers the trespass." The court continued, "The trespass can be [an] ongoing offense if a defendant maintains the violating presence on the property of another — erects a building or something on the property of another. Then that

17

trespass continues every day that that violation remains." *See Hoery v. United States*, 64 P.3d 214, 216-17 (Colo. 2003) (applying the concept of continuing torts to a property owner's claim of trespass involving toxic chemicals).

¶ 37    But the court said that Nsirat's duty to perform under the bill of sale did "not present any continuing duty to perform" because the Omers' payment of monies and Nsirat's transfer of the business's assets were "discrete" actions. So too, the court reasoned, Nsirat's alleged failure to deliver the business assets to the Omers was a "discrete action that should have been discovered within a very reasonable time after the sale," and waiting ten to thirteen years following the purported sale before filing suit "is not a reasonable period of time." We agree with the district court's reasoning.

¶ 38    Nonetheless, the Omers rely on *Neuromonitoring Associates v. Centura Health Corp.*, 2012 COA 136, to support that the parties' agreement is subject to continuing breaches. This case, however, is inapposite. In *Neuromonitoring*, a division of this court determined that, where there are successive breaches for continuing contractual obligations, a new breach occurs "for each separate

18

breach," thus entitling a plaintiff to bring a separate claim. *Id.* at ¶ 36 (quoting *Noonan v. Nw. Mut. Life Ins. Co.*, 687 N.W.2d 254, 262 (Wis. Ct. App. 2004)). At issue in that case was an agreement subject to automatic one-year renewals. *Id.* at ¶ 3. Although the defendant sought to apply the three-year statute of limitations for contract disputes, the plaintiff argued, and the division agreed, that each automatic renewal of the contract created a continuing or new breach. *Id.* at ¶¶ 5, 6.

¶ 39 The case is distinguishable from the Omers' situation because (1) there is a lack of documentation supporting that the parties had a completed agreement upon which to base continuing duties and, therefore, Nsirat's alleged continuing breaches; and (2) there were no renewal periods set forth in the bill of sale creating new contractual obligations. Therefore, we do not agree that any continuing breaches render the Omers' claims timely filed.

¶ 40 Accordingly, we conclude the district court properly entered judgment on the pleadings in favor of Nsirat because the Omers' claims are all time barred.

### III. Conclusion

¶ 41 The judgment is affirmed.

19

JUDGE LIPINSKY and JUDGE MOULTRIE concur.