**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1419
_____

WASHINGTON UNIVERSITY,
                                                  Appellant

v.

WISCONSIN ALUMNI RESEARCH FOUNDATION
_____

On Appeal from the United States District Court
for the District of Delaware
(District Court No. 1-13-cv-02091)
District Judge: Honorable Gregory M. Sleet
_____

Argued
November 8, 2016
_____

Before: McKEE, RESTREPO, *Circuit Judges*, and HORNAK[*], *District Judge*.

(Opinion filed: July 11, 2017)

Deanne E. Maynard        (Argued)
Marc A. Hearron
Morrison & Foerster
2000 Pennsylvania Avenue, N.W.
Suite 6000
Washington, DC 20006

_____

[*] Honorable Mark R. Hornak, District Judge, United States District Court for the Western District of Pennsylvania, sitting by designation.

Michael A. Jacobs
Christopher L. Robinson
Morrison & Foerster
425 Market Street
34th Floor
San Francisco, CA 94105

John G. Day
Ashby & Geddes
500 Delaware Avenue
P.O. Box 1150, 8th Floor
Wilmington, DE 19899

    Attorneys for Appellant

Robert F. Shaffer    (Argued)
Krista E. Bianco
J. Michael Jakes
Finnegan Henderson Farabow Garrett & Dunner
901 New York Avenue, N.W.
Washington, DC  20001

Mary B. Graham, Esq.
Morris Nichols Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

    Attorneys for Appellee

_____

OPINION**
_____

McKEE, *Circuit Judge.*

    Washington University appeals from the district court's grant of summary

---

** This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

judgment to Wisconsin Alumni Research Foundation ("WARF"). For the reasons that follow, we reverse the District Court's judgment.

## I.

The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291. We review grants of summary judgment de novo.[1] Summary judgment is appropriate where the moving party is entitled to judgment as a matter of law, and there are no genuine disputes as to any material facts.[2] In reviewing a motion for summary judgment, we view the evidence in the light most favorable to the non-moving party.[3] We refrain from making credibility determinations or weighing the evidence.[4]

## II.

Washington University filed this action in December 2013 alleging that WARF breached a 1995 Agreement it had with Washington University pertaining to assignment of rights to a certain patent (the "'815 patent"), and the covenant of good faith and fair dealing implied in that agreement, as well as the fiduciary duty that arose from that agreement. Washington University claimed that WARF's breach resulted from WARF's failure to assign a proper value to the '815 Patent which resulted in underpayments to Washington University. The University also argued that the annual payment exception to

---

[1] *Montone v. City of Jersey City*, 709 F.3d 181, 189 (3d Cir. 2013).
[2] *See, e.g.*, *Hampton v. Borough of Tinton Falls Police Dept.*, 98 F.3d 107, 112 (3d Cir. 1996).
[3] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Wisconsin's statute of limitations as well as the doctrine of equitable estoppel precluded its claims from being time barred.

The District Court ruled that the implied covenant of good faith and fair dealing required "WARF to exercise its authority to assign relative values fairly and in good faith" and thus partially granted Washington University's summary judgment motion.[5] However, the Court agreed with WARF's argument that the University's suit was time-barred under the applicable statute of limitations because the University's claim for breach of contract was based solely on WARF's initial assignment of relative value to the Patent in 1998, and the annual payment exception therefore did not apply. Finally, the court found no evidence of inequitable conduct by WARF and concluded that equitable estoppel also did not rescue the University's claims from the operation of Wisconsin's six-year time bar.

### III.

On appeal, Washington University argues that the annual payment exception applies here because WARF had an ongoing obligation to fairly assign a relative value to the '815 Patent and pay the University accordingly. According to the University, the implied covenant of good faith and fair dealing required WARF to calculate and distribute the amount of royalties Washington University was entitled to *each* year, and thus, each year's alleged underpayment constitutes a separate breach. Accordingly, the University claims it can seek damages arising from all payments that accrued on or after April 2007.

---

[5] A21.

Under the annual payment exception, also known as the "continuing violation rule," if a party has a continuing duty to perform, "generally a new claim accrues for each separate breach . . . . [, and] the injured party may assert a claim for damages from the date of the first breach within the period of limitation."[6]

Under Wisconsin law, every contract includes an implied covenant of good faith and fair dealing.[7] "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith.'"[8] Even where all of the written terms of a contract have been fulfilled, a party may be liable for breaching the covenant of good faith and fair dealing.[9] The breach may consist of "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance."[10] However, one cannot establish a claim for breach of this covenant when the acts constituting the breach are authorized by the contract.[11] The rule was not intended to undo express terms of a

---

[6] *Noonan v. Northwestern Mutual Life Ins. Co.*, 687 N.W.2d 254, 262 (Wis. Ct. App. 2004) (citations omitted).
[7] *See, e.g.*, *Biedel v. Sideline Software, Inc.*, 842 N.W.2d 240, 250 (Wis. 2013).
[8] Restatement (Second) of Contracts § 205 cmt. a (1981).
[9] *Foseid v. State Bank of Cross Plains*, 541 N.W.2d 203, 212 (Wis. Ct. App. 1995) (citing *In re Chayka's Estate*, 176 N.W.2d 561 (Wis. 1970)).
[10] *Id.* at 213 (quoting Restatement (Second) of Contracts § 205 cmt. d).
[11] *See Beidel*, 842 N.W.2d at 251 (citation omitted).

contract, but "obligations under those terms must be performed subject to that implied covenant."[12]

We agree with the District Court's conclusion that the Agreement created an obligation of good faith and fair dealing which governed WARF's assessment of the amount of royalties owed to the University. However, we believe an issue of fact remains as to whether WARF had a continuing obligation to reassign a value to the '815 Patent. Washington University argues that the implied covenant of good faith and fair dealing creates an inherent duty in WARF to reassign a value to the Patent, and WARF's failure to do so makes WARF liable for breach of contract.

A party cannot use the covenant to undo express terms of a contract. However, "obligations under those terms must be performed subject to that implied covenant,"[13] and the intent of the parties to a contract is the determinative factor in ruling upon disputed contract provisions.[14] On this record, we believe there is a genuine issue of material fact as to whether WARF and the University intended that the '815 Patent would be revalued if it became clear that the value originally assigned to the '815 Patent was insufficient to fairly compensate the University under the 1998 Agreement. Despite WARF's arguments to the contrary, the express terms of the contract do not answer that

---

[12] *Wisconsin Natural Gas Co. v. Gabe's Constr. Co., Inc.*, 582 N.W.2d 118, 121 (Wis. Ct. App. 1998) (citation omitted).
[13] *Id.* (citation omitted).
[14] *Maryland Arms Ltd. P'ship v. Connell*, 786 N.W.2d 15, 20 (Wis. 2010) (quoting *Seitzinger v. Cmty. Health Network*, 676 N.W.2d 426, 433 (Wis. 2004) ("The primary goal in contract interpretation is to give effect to the parties' intentions.")).

6

question. Accordingly, we conclude that the District Court erred in concluding that the annual payment exception to Wisconsin's statute of limitations could not apply here.

## IV.

Washington University also alleges that the doctrine of equitable estoppel preserves its claims because WARF prevented the University from timely filing suit. The doctrine of equitable estoppel applies where there is "(1) action or non-action; (2) on the part of one against whom estoppel is asserted; (3) which induces reasonable reliance thereon by the other, either in action or non-action; (4) which is to the relying party's detriment."[15] This "action or non-action" includes concealing evidence needed by the relying party to file a claim.[16] The conduct or representations of the party asserting the statute of limitations must be "so unfair and misleading as to outbalance the public's interest in setting a limitation on bringing actions."[17] Where plaintiffs "[retain] the ability, notwithstanding the defendants' [conduct], to obtain information necessary to pursue [the] claim," courts have refused to grant equitable estoppel.[18]

This record shows that WARF submitted an incorrect form to the PTO, falsely representing that Dr. Slatopolsky had assigned his interest in the '815 Patent. In that

---

[15] *Affordable Erecting, Inc. v. Neosho Trompler, Inc.*, 715 N.W.2d 620, 628 (Wis. 2006); *Milas v. Labor Ass'n of Wisconsin, Inc.*, 571 N.W.2d 656, 660 (Wis. 1997).

[16] *See Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 689 (7th Cir. 2004).

[17] *Hester v. Williams*, 345 N.W.2d 426, 431 (Wis. 1984) (quoting *State ex rel. Susedick v. Knutson*, 191 N.W.2d 23, 26 (Wis. 1971)).

[18] *Jackson v. Rockford Housing Auth.*, 213 F.3d 389, 394 (7th Cir. 2000).

submission, WARF claimed that it was therefore the sole owner of the '815 Patent.[19]

Further, in 1998, when Washington University requested a copy of WARF's license agreement with Abbott Laboratories, WARF purported to rely upon a nonexistent confidentiality provision to avoid sharing its agreement with Abbott from the University.[20] In a 2001 letter to Washington University explaining how the relative values of the patents were determined, WARF represented that it was "difficult if not impossible" to determine whether Abbott was using the Patent.[21] However, at that time, WARF had already concluded that the Patent provided protection and support for Abbott's Zemplar. Abbott had also listed the Patent in the Orange Book, suggesting that it was a key patent for the approved use of Zemplar. Moreover, WARF actively litigated to protect its interest in Zemplar from generic competition by asserting the Patent in litigation to protect Zemplar from generic competition.[22]

On this record, there is clearly a genuine dispute of fact regarding whether Washington University knew that WARF's statements regarding confidentiality and assignment of value were inaccurate. The District Court's conclusion that a reverse calculation would have informed Washington University of the assignment of value is disputed because the University did not have access to WARF's relative valuation of the

---

[19] App. 1561-64. In 2012, Washington University discovered this, and requested WARF to correct the misstatement. *See* App. 2082.

[20] App. 171.

[21] App. 1591.

[22] This is not intended as an exhaustive listing of the issues of material fact. Rather we specify these issues merely to illustrate that this record does not support summary judgment, and WARF was therefore not entitled to judgment as a matter of law.

Patent and a reverse calculation would not have revealed whether the valuation was fair and/or correct.

Accordingly, the District Court erred in concluding that equitable estoppel was inapplicable here as a matter of law. Genuine issues of material fact remain regarding (1) whether WARF concealed information Washington University needed to determine if it had a valid claim; (2) whether that information was necessary to pursue the claim; (3) whether Washington University reasonably relied on WARF's statements and conduct; and (4) whether Washington University had the ability to obtain that information, notwithstanding WARF's alleged concealment.

## V.

For the reasons set forth above, we reverse the District Court's judgment.